**UNITED STATES of America**

v.

**Vincent J. ARMATA.**

**Crim. No. 61-11.**

United States District Court
D. Massachusetts.

May 9, 1961.

**625**

Joseph S. Mitchell, George H. Lewald, Elliot L. Richardson, Boston, Mass., for the Government.

Paul J. Cavanaugh, Boston, Mass., for defendant.

WYZANSKI, District Judge.

By a memorandum filed March 14, and by subsequent oral argument in open court, defendant's court-appointed counsel renews his motion of February 17 to dismiss the indictment on the ground that it "fails to allege facts sufficient to constitute an offense against the United States."

January 23 the grand jury charged that on December 3, 1960, Armata "within the special maritime and territorial jurisdiction of the United States, at the Boston Naval Shipyard * * * did take and carry away with intent to steal and purloin * * * $532 * * * from the Children's Christmas Party Fund of the Civilian Welfare Funds Director of said Boston Naval Shipyard; in violation of 18 U. S.C. 661."

Responding to a motion, the United States Attorney on March 29 gave a bill of particulars. Therein it appeared that Armata was "a group treasurer of the Children's Christmas Party Fund." He was appointed as a group treasurer by a senior civilian supervisor of the Shipyard who in turn derived his own appointment as well as his authority to delegate from the Shipyard's Director of the Civilian Welfare Funds, who, in turn, de-

rived his appointment and his authority to delegate from the Shipyard Commander. As group treasurer, Armata collected and held in his custody money contributed by civilian employees of the Shipyard. The Government, whether correctly or not, concedes in the bill of particulars that Armata was one of the persons who had "legal title" to the collected money.

The Government claims it has evidence tending to show that on December 3 Armata used the funds which were in his custody (and to which the Government generously concedes he had title,) not for the purpose of making "approved expenditures in behalf of the * * * fund", but presumably for his purely private purposes.

If the Government proves its claim, defendant admits that the facts would constitute the crime of embezzlement. But defendant's contention is that there is no United States statute making embezzlement at a Naval Shipyard a crime against the United States.

Defendant's argument is premised on his view that 18 U.S.C. § 661 reaches only larceny, not embezzlement. In my opinion there are two answers to the argument. First, 18 U.S.C. § 661 does reach embezzlement. Second, if 18 U.S.C. § 661 did not reach embezzlement, 18 U.S.C. § 13 would reach it; and the erroneous citation of the first statute in the indictment is not a bar to the prosecution.

■ 1. As it now reads, 18 U.S.C. § 661 provides that:

"Whoever, within the special maritime and territorial jurisdiction of the United States, takes and carries away, with intent to steal or purloin, any personal property of another shall be punished * * *"

Were this a statute originally enacted in 1961, there could be no serious contention that the act failed to comprehend embezzlement as well as larceny. United States v. Turley, 352 U.S. 407, 77 S.Ct. 397, 1 L.Ed.2d 430. United States v. Handler, 2 Cir., 142 F.2d 351. Note 146 A.L.R. 532.

However, the point pressed is that 18 U.S.C. § 661 is derived from the Crimes Act of 1790, § 16 of the Act of April 30, 1790, c. 9, 1 Stat. 116 and that the first Congress, learned in the common law of the Eighteenth Century, used words then apt to reach larceny as defined at common law, and deliberately refrained from stretching the new federal criminal law to catch embezzlement which was not covered by the magic formula "take and carry away" the hallmark of the common law crime of larceny with its indispensable kernel of asportation.

The point fails for many reasons.

One is that the original 1790 statute, like its current codification, uses words broader than those in which the common law crime of larceny was defined. The statute and code both refer to an "intent to steal or purloin." The word "steal" was not in the Eighteenth Century a word of art, nor was it a word used in the definition of larceny. See United States v. Turley, 352 U.S. 407, 410–414, 77 S.Ct. 397, 1 L.Ed.2d 430. Cf. United States v. Handler, 2 Cir., 142 F.2d 351, 353. On the contrary, it is a word of the broadest generic nature, covering all forms of wrongful handling of property, including embezzlement.

A second reason that the point fails is that the full text of § 16 of the Crimes Act of 1790 shows that it, and all its parts, were directed at embezzlement no less than at larceny. The original language follows:

"Sec. 16. And be it [further] enacted, That if any person within any of the places under the sole and exclusive jurisdiction of the United States, or upon the high seas, shall take and carry away, with an intent to steal or purloin the personal goods of another; or if any person or persons, having at any time hereafter the charge or custody of any arms, ordnance, munition, shot, powder, or habiliments of war belonging to the United States, or of any victuals provided for the victualing of any soldiers, gunners, marines or pioneers, shall for any lucre or gain, or wittingly, advisedly, and of purpose to hinder or impede the service of the United States, embezzle, purloin or convey away any of the said arms, ordnance, munition, shot or powder, habiliments of war, or victuals, that then and in every of the cases aforesaid, the person or persons so offending, their counsellors, aiders and abettors (knowing of and privy to the offences aforesaid) shall, on conviction, be fined not exceeding the four-fold value of the property so stolen, embezzled or purloined; the one moiety to be paid to the owner of the goods, or the United States, as the case may be, and the other moiety to the informer and prosecutor, and be publicly whipped, not exceeding thirty-nine stripes."

If, which is doubtful, the charge delivered in United States v. Holland, C.C. N.Y.1843, Fed. Case No. 15,378, construes § 16 of the 1790 Crimes Act so as to exclude embezzlement, the charge is a precedent which I decline to follow.

■ 2. Were it true (which it is not) that 18 U.S.C. § 661 failed to reach embezzlement at the Shipyard, 18 U.S.C. § 13 would embrace the offense. That section provides:

"Whoever within or upon any of the places now existing or hereafter reserved or acquired as provided in section 7 of this title, is guilty of any act or omission which, although not made punishable by any enactment of Congress, would be punishable if committed or omitted within the jurisdiction of the State, Territory, Possession, or District in which such place is situated, by the laws thereof in force at the time of such act or omission, shall be guilty of a like offense and subject to a like punishment."

There is, of course, no question that embezzlement is punishable if committed within the jurisdiction of the Commonwealth of Massachusetts. Mass.G.L.

(Ter.Ed.) c. 266, § 30. And it follows that it becomes punishable by virtue of the just-quoted Assimilative Crimes Act, if it be assumed that embezzlement is not punishable under 18 U.S.C. § 661. Furthermore, nothing turns on the point that the text of the indictment returned by the grand jury refers only to 18 U. S.C. § 661 and not to 18 U.S.C. § 13. See Rule 7(c) of the Rules of Criminal Procedure, 18 U.S.C.

Motion to dismiss indictment denied.