**Hubert Junior WALKER, Appellant,**

v.

**UNITED STATES of America, Appellee.**

**No. 25572.**

United States Court of Appeals
Fifth Circuit.

Dec. 11, 1968.

Rehearing Denied Jan. 6, 1969.

Jack Paul Leon, San Antonio, Tex., for appellant.

Ted Butler, Asst. U. S. Atty., Ernest Morgan, U. S. Atty., San Antonio, Tex., for appellee.

Before RIVES and DYER, Circuit Judges, and MEHRTENS, District Judge.

DYER, Circuit Judge:

Walker appeals his jury conviction under the Dyer Act, 18 U.S.C.A. § 2312, for knowingly, willfully and unlawfully transporting a stolen vehicle in interstate and foreign commerce. He complains that evidence identifying him as the driver of the stolen vehicle was tainted by an unlawful search pursuant to an illegal arrest and that the admission into evidence of a private conversation between him, his attorney and the owner of a credit card (in whose name the automobile was rented) violated his privilege against compulsory self-incrimination. ' We reverse.

On August 25, 1966, Walker used, without authorization, a credit card of one Grenville Lewis to rent an automobile in Lake Charles, Louisiana. Under the terms of the rental agreement the automobile was to be returned on August 27, 1966.

On September 5, 1966, a reliable informant called Customs Agent Diaz and told him that two Americans were in Mexico attempting to trade guns, cameras and a check protecting machine to the informant in return for heroin. The informant described Walker and the automobile the Americans were driving. Agent Diaz crossed into Mexico and passed an automobile and driver fitting the description given to him by the informant. Diaz turned and followed the automobile back to the border. A cur-sory search of the automobile disclosed a check protecting machine, but no guns or cameras.

Because it appeared to the Customs Agents that a delivery of heroin might be made to someone in the United States, the border search was temporarily discontinued at that time. The car was allowed to pass without the usual search being completed and thereafter was placed under surveillance. The Customs Agents, after some time, were unable to maintain contact with the automobile due to its high rate of speed. A Customs Agent then requested the Texas Department of Public Safety to broadcast an all-points lookout and to set up a roadblock. The Department had been previously alerted on August 30, 1966, by the Sheriff's Department in Lake Charles, Louisiana, that the automobile involved was a stolen rental automobile, but at that time the Department had no reason to believe that the automobile was in Texas. On the evening of September 5, 1966, the rental automobile was stopped and identified at a roadblock set up about eight miles west of Carrizo Springs, Texas, pursuant to the request made by the Customs Agents. Walker was identified as the driver and was arrested. Walker contends that his motion to suppress the evidence obtained at the roadblock (that he was driving a vehicle that was stolen) should have been granted because such evidence was obtained by a search pursuant to an illegal arrest made without probable cause. The Government responds that the search was a valid "border search" pursuant to 19 U.S.C.A. § 482.

Pointing to the fact that he was arrested some eight hours and forty-five highway miles from the border, Walker urges that the search at the roadblock could not have been a border search. We fully agree with the District Court that the search west of Carrizo Springs was a valid "border search."

The right of border search is indeed broad, and the border itself is elastic. Judged by Texas standards, sixty-three miles is a small distance, and if the

Customs agents had any reason, even though not ordinarily measuring up to "probable cause," it might under all of the circumstances, suffice to meet the constitutional test of reasonableness and amount to "probable cause." Marsh v. United States, 5 Cir. 1965, 344 F.2d 317.

While border searches must measure up to the constitutional standard of reasonableness, suspicion that a person is carrying merchandise unlawfully imported into the United States is sufficient. Border searches are in a category distinct from other searches and seizures, and neither a search warrant nor probable cause is required. Morales v. United States, 5 Cir. 1967, 378 F.2d 187; Thomas v. United States, 5 Cir. 1967, 372 F.2d 252.

Walker also asserts that the trial judge erred in admitting evidence of a private conversation that took place between Walker and Lewis after Walker's arrest and while he was out on bond. Walker and his attorney went to see Lewis at his home, and Walker's attorney told Lewis that Walker had gotten into some trouble and expressed Walker's desire to make restitution for any expenses incurred by Lewis due to the unauthorized use of his credit cards. Lewis asked Walker where he got the credit cards. Walker refused to respond on the ground that the answer might tend to incriminate him.

At the time of trial the court overruled Walker's objection to the admission in evidence of his refusal to answer Lewis' question.[1]

■ The Government insists that Walker's answer should be equated with silence and that silence in the face of an accusatory statement, where understood, and there exists an opportunity to deny, is admissible as an admission of guilt. Sparf and Hansen v. United States, 1895, 156 U.S. 51, 15 S.Ct. 273, 39 L.Ed. 343. Sparf is clearly inapposite because there Hansen's declarations had some probative value and were not admitted solely for prejudicial effect, while here Walker's claim of privilege was of no probative value and had no rational bearing on Walker's guilt or innocence. Moreover, a claim of privilege cannot be equated with silence. When an accused responds to a question, or even to an accusation, with an assertion of a claimed legal or constitutional right, the jury should not be permitted to infer from such an assertion any consciousness of guilt or tacit admission. See United States v. Gross, 2 Cir. 1960, 276 F.2d 816, 820–821; Commonwealth v. Sazama,

---

1. This subject was explored the previous day in the Court's chambers. At that time defense counsel noted his objection.
   "MR. LEON: My objection to that statement on the part of the defendant would be different than to what Mr. Hunt [Walker's former attorney] said. *My objection to that statement is that it violates the defendant's right to remain silent and not to incriminate himself, and that statement being made at any time or any place, that he refuses to say because it might incriminate himself, cannot be otherwise admissible because it is his remaining silent that creates a doubt as to his guilt, and that in effect incriminates him, so I don't think that that statement on the part of the defendant is admissible. "THE COURT: You are going to be overruled on that."*
   At the trial the prosecutor's direct examination of Lewis, his answers, and defense counsel's objections were as follows:
   "Q. Did you have any conversation with Mr. Walker during this period of time?
   "A. I asked Mr. Walker a question and he said—
   "Q. Now, what question did you ask Mr. Walker?
   "A. I asked him, 'Just how did you get my credit cards?'
   "MR. LEON [counsel for defendant]: Your Honor, I object to this again for the same reasons I stated yesterday in the Court's Chambers, I renew my objection to all of this testimony.
   "THE COURT: Overruled.
   "Q. What reply did Mr. Walker make to that?
   "A. He said, 'I refuse to answer on the grounds it might incriminate me.' "

1959, 339 Mass. 154, 158 N.E.2d 313; Ewell v. State, 1961, 228 Md. 615, 180 A.2d 857, 859; Watson v. State, Alaska 1963, 387 P.2d 289; 79 Harv.L.Rev. 1039 (1966); 52 Cornell L.Q. 344; 42 Boston U.L.Rev. 52.

Not only was evidence of Walker's refusal irrelevant but it was also prejudicial. We would be naive if we failed to recognize that most laymen view an assertion of the Fifth Amendment privilege as a badge of guilt. As said by Mr. Justice Frankfurter, speaking for the Court:

> "This constitutional protection must not be interpreted in a hostile or niggardly spirit. Too many, even those who should be better advised, view this privilege as a shelter for wrongdoers. They too readily assume that those who invoke it are either guilty of crime or commit perjury in claiming the privilege. Such a view does scant honor to the patriots who sponsored the Bill of Rights as a condition to acceptance of the Constitution by the ratifying States."

Ullmann v. United States, 1956, 350 U.S. 422, 426, 427, 76 S.Ct. 497, 500, 100 L.Ed. 511. See also Grunewald v. United States, 1957, 353 U.S. 391, 77 S.Ct. 963, 1 L.Ed.2d 931.

To compound the court's error in overruling the objection to Walker's refusal to answer Lewis' question, Government counsel in summation to the jury used a twisted and erroneous version of Walker's refusal when he said:

> "You will recall what he told Mr. Grenville Lewis up in Dallas when they were having this discussion, Mr. Lewis asked him, 'Well, Mr. Walker, how did you get my cards?' And what was his reply, this man that thinks he's got the right to use them, he says, '*I can't tell you that because I would incriminate myself,*' and that is the same man whose wife comes in here and says that 'my brother says we are au-

thorized to use them.'" (Emphasis added.)

This comes perilously close to, if indeed it does not amount to, a comment on Walker's failure to testify which is prohibited by the self-incrimination clause of the Fifth Amendment. Griffin v. California, 1965, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106, and even without objection is so improper and prejudicial as to amount to plain error effecting Walker's substantial rights.[2]

Reversed and remanded.

---

**2.** "Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention

of the court." Rule 52(b), Fed.R.Crim. P.