**UNITED STATES of America,
Plaintiff-Appellee,**

**v.**

**Verland L. BEARD, Defendant-Appellant.**

**No. 28155.**

United States Court of Appeals,
Fifth Circuit.

Jan. 4, 1971.

Rehearing Denied Feb. 11, 1971.

Jack Paul Leon, San Antonio, Tex., for defendant-appellant.

Reese L. Harrison, Jr., Asst. U.S. Atty., Seagal V. Wheatley, U. S. Atty., San Antonio, Tex., for plaintiff-appellee.

Before GODBOLD, SIMPSON and MORGAN, Circuit Judges.

SIMPSON, Circuit Judge.

Verland L. Beard here appeals a conviction by a jury with respect to certain funds of the Mutual Aid Association at Kelly Air Force Base, Texas.[1] We reverse.

Beard was the office manager of the Mutual Aid Association at Kelly Air Force Base, Texas, which is within the special territorial jurisdiction of the United States. Title 18, U.S.C., Section 7(3). He was initially indicted for embezzling funds from the Association in violation of Title 18, U.S.C., Section 13, the Assimilative Crime Act, and Article 1534 of the Texas Penal Code.[2] The purpose of the Assimilative Crime Act is to allow the United States to prosecute persons for acts in or on places to which the special federal jurisdiction extends provided such acts are unlawful in the State, Territory or Possession in which the federal enclave is located.

However, after the trial of the defendant-appellant had begun, a fatal defect in the government's case as to a violation of Title 18, U.S.C. § 13, came to light. It was tardily discovered by the prosecutor that under basic Texas law in order to sustain a conviction for embezzlement under the statute title must be shown to be in the injured person or entity at the time the offense is committed. Villarreal v. State, Tex.Cr.App., 385 S.W.2d 248 (1964). Further it developed that under Texas law a volun-

---

1. Beard was indicted on eleven counts of embezzlement. Each count alleged a similar offense with only the amounts and dates differing. The district court granted appellant's motion for judgment of acquittal as to Counts I and IX, and the remaining counts were submitted to the jury. The jury convicted on all nine counts. Appellant was sentenced to serve one year on each of Counts II, III and IV, the sentences to run consecutively. Appellant was sentenced to three years probation on the remaining six counts.

2. Title 18, U.S.C., § 13 provides:
   *Laws of states adopted for areas within federal jurisdiction.*
   Whoever within or upon any of the places now existing or hereafter reserved or acquired as provided in section 7 of this title, is guilty of any act or omission which, although not made punishable by any enactment of Congress, would be punishable if committed or omitted within the jurisdiction of the State, Territory, Possession, or District in which such place is situated, by the laws thereof in force at the time of such act or omission, shall be guilty of a like offense and subject to a like punishment.

   The statute thus incorporated, and the indictment charged a violation of Article 1534 of the Texas Penal Code:
   Art. 1534. Embezzlement
     If any officer, agent, clerk, employé, or attorney at law or in fact of any incorporated company or institution, or any clerk, agent, attorney at law or in fact, servant or employé of any private person, copartnership or joint stock association, or any consignee or bailee of money or property, shall embezzle, fraudulently misapply or convert to his own use, without the consent of his principal or employer, any money or property of such principal or employer which may have come into his possession or be under his care by virtue of such office, agency or employment, he shall be punished in the same manner as if he had committed a theft of such money or property.

tary association, such as the Mutual Aid Association, Kelly Air Force Base, is not a person or any legal entity (described in Art. 1534 of the Texas Penal Code) capable of holding title to funds subject to embezzlement. Kauffman v. Parker, Tex.Civ.App., 99 S.W.2d 1074 (1936); Daniel v. State, 128 Tex.Cr.R. 660, 83 S.W.2d 335 (1935). It developed at trial that a Mr. McMillan was the legal custodian of the funds, not Beard as charged; Beard was simply the office manager. Additionally, government counsel conceded that the Mutual Aid Association, Kelly Air Force Base, had not complied with Article 14.54 of the Insurance Code of Texas and therefore it could not invoke the protection of Article 14.55 of the Insurance Code of Texas, making it a criminal offense to convert funds of a mutual aid association.

Faced with these obstacles, the government proceeded to urge that while the operative facts did not charge a violation of Title 18, U.S.C., Section 13, they did charge a violation of Title 18, U.S.C. Section 661.[3] The government argued that a change in the statute relied upon, without a change in the operative facts alleged in the indictment, would not render the prosecution defective. Williams v. United States, 168 U.S. 382, 18 S.Ct. 92, 42 L.Ed. 509 (1897); Masi v. United States, 5 Cir. 1955, 223 F.2d 132, 133; F.R.Crim.P. 7(c). The appellant moved to dismiss the indictment as charging a violation of Title 18, U.S.C., Section 661, because under this statutory provision embezzlement committed within the special territorial jurisdiction of the United States is not a crime, only taking and carrying away with intent to steal or purloin. The district court after consideration rejected this argument and denied the motion to dismiss the indictment. Beard's counsel then moved for a mistrial on the grounds of surprise and unpreparedness.

The district court was considering this request and questioning counsel regarding any possible double jeopardy problems which might arise from the declaring of a mistrial when appellant's counsel stated that he withdrew the request for a mistrial and was ready to proceed at that time with the trial. The trial was completed and the appellant was convicted.

■ We think that the conviction must be reversed. This is so regardless of the withdrawal of the motion for mistrial or continuance on the ground of surprise. Appellee appears to urge that this action was a waiver of some sort of the error already committed, the denial of the motion to dismiss or for judgment of acquittal. The error here was as to a basic and fundamental right of the appellant. Amendment V to the Constitution of the United States speaks in unmistakable terms: "No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury, * * * nor be deprived of life, liberty, or property, without due process of law * * *." "Due process" in Fifth Amendment terms requires at a minimum that a defendant be given reasonable notice and opportunity to defend against that with which he is charged. The Fifth Amendment entitles a defendant in a criminal case to be indicted for the offense for which he is to be tried, or to be tried only for the offense for which he is under indictment. The proceedings below manifest to us the disregard of these constitutional rights.

The only case ever presented by the prosecution to the Grand Jury necessarily was on the theory that the actions of the appellant constituted a violation of Title 18, U.S.C., Section 13, by reason of violation of the Texas embezzlement statute, Section 1534 of the Texas Penal

---

3. Title 18, U.S.C., Section 661, in pertinent part, reads:

"Whoever, within the special maritime and territorial jurisdiction of the Unit-

ed States, takes and carries away, with intent to steal or purloin, any personal property of another shall be punished * * *"

Code. The appellant was tried and convicted for violating a wholly different statutory provision, Title 18, U.S.C., Section 661. Permission was not asked of or given by the trial judge for formal amendment of the indictment, but nevertheless the indictment was in effect amended by the government's change in position during the course of the trial when the fatal defects in the proof came to light, and the court refused to grant the motion to dismiss the indictment. The D. C. Circuit has recently had occasion to advert to the recognized potential for prejudice to the defendant when a variance is permitted between indictment and proof, or when an indictment is actually or effectively amended. Gaither v. United States, 1969, 134 U.S. App.D.C. 154, 413 F.2d 1061. The court noted:

> "An amendment is thought to be bad because it deprives the defendant of his right to be tried upon the charge in the indictment as found by the grand jury and hence subjected to its popular scrutiny. A variance is thought to be bad because it may deprive the defendant of notice of the details of the charge against him and protection against re-prosecution." 413 F.2d at 1071–1072.

See also Russell v. United States, 369 U.S. 749, 82 S.Ct. 1038, 8 L.Ed.2d 240 (1962); Stirone v. United States, 361 U.S. 212, 80 S.Ct. 270, 4 L.Ed.2d 252 (1960); Ex Parte Bain, 121 U.S. 1, 7 S.Ct. 781, 30 L.Ed. 849 (1887). The government's theory of guilt under the two contradictory statutes would of course necessarily be completely dissimilar. No one can say whether the Grand Jury under the facts present would have indicted the appellant for violation of Title 18, U.S.C. Section 661. All we know is that the Grand Jury did not indict Beard under this section. We cannot indulge in speculation as to this point. Rather, the conviction based upon such a shaky foundation, resting upon such uncertainty, must be reversed.

The cases cited by appellee, supra, are applicable where only a technical or typographical error in the indictment is involved, where the statute involved is incorrectly set out, or the like. They are of no help here, where after the deficiencies in the government case were revealed at trial, a statute totally different and unrelated to Title 18, U.S.C. Section 13, was brought forth and relied upon as supporting conviction.

The appellee also seeks to apply Criminal Rule 7(c)'s admonition that "Error in the citation or its omission shall not be ground for dismissal of the indictment or information or for reversal of a conviction if the error or omission did not mislead the defendant to his prejudice." This was not a simple error in citation. The applicable rule we think is Criminal Rule 7(e). Rule 7(e). F. R.Crim.P., allows the court to permit informations—*not indictments*—to be amended at any time before verdict or finding if no additional or different offense is charged and if substantial rights of the defendant are not prejudiced. Observe that only informations may be amended and then *only if no additional or different offense is charged.*

The reason indictments may not be amended is clear. This would substitute the prosecutor's judgment for that of the constitutional body, the Grand Jury, in framing the charge against a defendant. This is the fatal flaw in the proceedings below. Ex Parte Bain, supra; Stirone v. United States, supra; Russell v. United States, supra. Compare Thomas v. United States, 5 Cir. 1967, 398 F.2d 531; Overstreet v. United States, 5 Cir. 1963, 321 F.2d 459 (but see dissenting opinion).

The action of appellant's counsel, in withdrawing his motions for mistrial and continuance and proceeding with the trial without further objection, may not, as suggested by the appellee's brief, be construed as a waiver of the denial of the motion to dismiss the indictment because of demonstrated fatal variance.

The prior denial of constitutional rights was by then[4] an accomplished fact.[5]

The considerations which require reversal here were not present in a case strongly relied upon by appellee, United States v. Armata, D.C.Mass.1961, 193 F.Supp. 624, assuming that *Armata* was correctly decided.[6]

First, the *Armata* indictment *charged* that Title 18, U.S.C., Section 661, was violated by "tak[ing], and carry[ing], away with intent to steal or purloin * * * $532 from the Children's Christmas Party Fund of the Civilian Welfare Funds Director of said Boston Naval Shipyard", so that the charge as made included all types of theft. In the case before us, on the other hand, the narrow and specific indictment charge was that the Assimilative Crimes Act was violated by embezzlement under a particular Texas Statute, Section 1564. Conceding *arguendo*, as held by Judge Wyzanski, that Section 661 includes embezzlement, based in part on the assertion that in its original use in the Eighteenth Century "steal" was not a word of art, citing United States v. Turley, supra, footnote 6, but was a broad generic term covering all types of wrongful handling of property including embezzlement, fails to establish the reverse proposition, necessary to sustain Beard's conviction, that the broader spectrum of

4. When the motion for mistrial or continuance was withdrawn, the record shows that the trial judge was debating, with himself, and with counsel, the question of whether former jeopardy would attach, so as to bar another trial, if the motion should be granted.

    That consideration was, or should have been, extraneous to the question that should have occupied the court's attention: Would continuation of the trial in process impinge upon the rights of Beard? The former jeopardy puzzle may receive an answer when the Supreme Court decides United States of America v. Milton C. Jorn, No. 19, October Term 1970, reargued October 22, 1970, 39 Law Week 3179. At any rate it could only properly arise as to Beard in an attempt to retry him on the original or a different indictment. It should not have concerned the court in its reaching a decision on the merits as to the matters before it in the trial now under review.

5. This holding renders unnecessary our consideration of applying to the facts of this case the familiar safeguards surrounding waiver of constitutional rights by a criminal defendant stemming from Johnson v. Zerbst, 1938, 304 U.S. 458, 58 S.Ct. 1019, 1022, 82 L.Ed. 1461, 1466, where waiver is defined (p. 464 of 304 U.S., p. 1023 of 58 S.Ct.) as "intentional relinquishment or abandonment of a known right or privilege", accompanied by admonitions there quoted from earlier decisions that where constitutional rights are involved "courts indulge all reasonable presumptions against waiver" (304 U.S. at p. 464, 58 S.Ct. at p. 1023, quoting Aetna Ins. Co. v. Kennedy, 301 U.S. 389, 393, 57 S.Ct. 809, 81 L.Ed. 1177 and Hodges v. Easton, 106 U.S. 408, 412, 1 S.Ct. 307, 27 L.Ed. 169) and that we "do not presume acquiescence in the loss of fundamental rights" (304 U.S. at p. 464, 58 S.Ct. at p. 1023, quoting Ohio Bell Telephone Co. v. Public Utilities Commission, 301 U.S. 292, 307, 57 S.Ct. 724, 81 L.Ed. 1093). Among the numerous cases adding their gloss to Johnson v. Zerbst is the landmark decision of Fay v. Noia, 1963, 372 U.S. 391, 439, 83 S.Ct. 822, 849, 9 L.Ed.2d 837, 869, where we are told that "a choice made by counsel not participated in by the petitioner does not automatically bar relief". Many later cases deal with application of these principles, but as indicated, we do not reach the question of whether a waiver occurred in the withdrawal of the motion for mistrial or continuance because of our view that the prejudicial deprivation of the appellant's Fifth Amendment rights was complete prior to the time these matters arose.

6. Without considering the extent, if any, that their vitality as precedent survives United States v. Turley, 1957, 352 U.S. 407, 410–414, 77 S.Ct. 397, 1 L.Ed.2d 430, we refer to the cases of Murphy v. United States, 5 Cir. 1953, 206 F.2d 571; Hite v. United States, 10 Cir. 1948, 168 F.2d 973; Loney v. United States, 10 Cir. 1945, 151 F.2d 1, 4, and United States v. Patton, 3 Cir. 1941, 120 F.2d 73, as correctly setting forth the classic distinction existing between larceny, involving asportation, the taking by trespass and carrying away, on the one hand, and embezzlement, involving conversion of money or property lawfully in the defendant's possession, on the other.

Section 661 coverage is included under the narrow embezzlement charge laid in Beard's indictment.

Further, with respect to the *Armata* case, the ruling there arose upon a motion to dismiss the indictment, and after a grant of bill of particulars, making precise as embezzlement the nature of the charge. Here to the contrary, we are asked by the appellee to hold that violation of Section 661 was encompassed by the charge under Title 18, U.S.C. Section 13, and the Texas Statute, and that appellant was not prejudiced when the charge was effectually changed to make finally apparent the trial court's view that this was the nature of the indictment charge.

Research fails to reveal a single case which has cited *Armata* in the nine or ten years since its publication. To the extent that it may be in point here, we think it was incorrectly decided and decline to follow it.

It is clear from the language of the Crimes Act of 1790, from which Section 661 of Title 18 derives, that Congress contemplated two separate crimes of stealing and embezzling when the original statute was enacted.[7]

Several matters should be noted as evidencing the understanding of Congress in the less distant past as to the distinction between stealing and embezzlement. One is that in the codification of the criminal law accomplished by the Act of June 25, 1948, c. 645, 62 Stat. 725, statutes covering "Embezzlement *and* Theft" (emphasis is ours) are grouped under that heading as Chapter 31 of Title 18, U.S.Code. We also note that by amendments and codifications of 1909, 1940 and 1948 the Crimes Act of 1790 has been changed by deletion of all reference to embezzlement. Further and finally in 1962,[8] recognition by Congress of the valid disctinction between theft and embezzlement was emphasized by the passage of Public Law 87–420, Sec. 17(a) Act of March 20, 1962, 76 Stat. 41, now codified at Title 18, U.S.Code, Sec. 664, and the inclusion therein of specific references to both offenses.[9]

Elimination of the distinction between theft, embezzlement, larceny after trust, larceny by trick, obtaining money by

---

7. We quote the original statute:
"And be it enacted, That if any person within any of the places under the sole and exclusive jurisdiction of the United States, or upon the high seas, shall take and carry away, with an intent to steal or purloin the personal goods of another; or if any person or persons, having at any time hereafter the charge or custody of any arms, ordnance, munition, shot, powder, or habiliments of war belonging to the United States, or of any victuals provided for the victualing of any soldiers, gunners, marines or pioneers, shall for any lucre, or gain, or wittingly, advisedly, and of purpose to hinder or impede the service of the United States, embezzle, purloin or convey away any of the said arms, ordnance, munition, short or powder, habiliments of war, or victuals, that then and in every of the cases aforesaid, the person or persons so offending, their counsellors, aiders and abettors (knowing of and privy to the offences aforesaid) shall, on conviction, be fined not exceeding the fourfold value of the property so stolen, embezzled or purloined; the one moiety to be paid to the owner of the goods, or the United States, as the case may be, and the other moiety to the informer and prosecutor, and be publicly whipped, not exceeding thirty-nine stripes."

8. This was a year after Judge Wyzanski's decision in United States v. Armata, supra. Of course it was years after United States v. Turley, supra, was decided by the Supreme Court in 1957.

9. Section 664, U.S.C.: *Theft or embezzlement from employee benefit plan.*
"Any person who embezzles, steals, or unlawfully and willfully abstracts or converts to his own use or to the use of another, any of the moneys, funds, securities, premiums, credits, property, or other assets of any employee welfare benefit plan or employee pension benefit plan, or of any fund connected therewith, shall be fined not more than $10,000.00, or imprisoned not more than five years, or both. As used in this section, the term 'any employee welfare benefit plan or employee pension benefit plan' means any such plan subject to the provisions of the Welfare and Pension Plans Disclosure Act."

false pretenses, receiving stolen property and similar offenses has often been proposed as to both federal and state statutes. Some of the states have adopted legislation accomplishing this end and others are moving toward it.[10] The latest proposal for the federal system is contained in the Study Draft of a new Federal Criminal Code recently circulated by the National Commission of Reform of Federal Criminal Laws. Section 1731 of that study draft provides:

§ 1731. Consolidation of Theft Offenses.

(1) Construction. Conduct denominated theft in sections 1732 to 1734 constitutes a single offense designed to include the separate offenses heretofore known as larceny, stealing, purloining, embezzlement, obtaining money or property by false pretenses, extortion, blackmail, fraudulent conversion, receiving stolen property, and the like.

(2) Charging Theft. An indictment or information charging theft under sections 1732 to 1734 which contains enough information about the events alleged to have taken place fairly to apprise the defendant of the nature of the charges against him shall be sufficient without further specifying the precise legal category of theft of which the defendant may be convicted. The defendant may be found guilty of theft under such an indictment or information if his conduct falls under any of sections 1732 to 1734, so long as the conduct proved is sufficiently related to the conduct charged that the accused is not unfairly surprised by the case he must meet.

## COMMENT

This section states the legal effect of consolidation. Subsection (2) permits a charge of "theft" with a description of the conduct, and should satisfy the constitutional requirements that the defendant must be apprised of the precise charge against him, tried on the charge stated in the indictment and provided with a basis for a claim of double jeopardy should the defendant be charged anew. Moreover, treating theft as one offense precludes conviction of two offenses for the same conduct on the ground that the conduct falls within two theories of theft, e. g., both taking and retaining the same property.[11]

Our approval by affirmance of the trial judge's action in this respect would be very nearly approximate to a holding by us that no need exists for this beneficial legislation: that judicial fiat suffices to supply the postulated need for change. We decline the invitation so to invade and take over the legislative process.

Beard urges additionally that the trial judge erroneously allowed evidence to be presented to the jury of his failure to explain discrepancies in the Association's books. At the trial FBI Special Agent Greb was permitted, without objection, to testify to a conversation that he had with the defendant concerning discrepancies in some of the records of the Mutual Aid Association. The sole discernible purpose of this testimony

---

10. We are informed without further documentation but by an accurate source, that California, Illinois, New York and Wisconsin have adopted such legislative reform, and that the proposal is receiving consideration as a part of the comprehensive revision of existing criminal codes in Oregon, New Hampshire, Vermont, Iowa and Kentucky.

11. The consolidation of theft offenses in the study draft of the proposed federal criminal code is the subject of discussion in the article "Offenses Redefined Under Proposed Federal Criminal Code" by Edmund G. (Pat) Brown and Louis B. Schwartz which appears in the December 1970 edition of the American Bar Association Journal at page 1181. The relevant discussion of theft offenses is found on page 1185.

was to point out that Beard made no comment on the differences in the books when questioned by the agent.[12] The thrust of appellant's argument is that this constituted comment by the government at trial on the refusal of Beard to speak in his own behalf, and was thus prejudicial to the appellant's rights under the Fifth Amendment to the Constitution of the United States. Walker v. United States, 5 Cir. 1968, 404 F.2d 900. The government attempts to distinguish *Walker* by noting that in that case the court failed to give any cautionary instruction concerning the Fifth Amendment right to remain silent and that the government counsel underscored the refusal of the defendant to comment in closing argument to the jury. The appellee asserts that here, on the other hand, the testimony concerning the failure of the defendant to explain the discrepancies was not purposely elicited to prejudice Beard in the eyes of the jury, and further that the trial judge admonished the jury that Beard had been advised of his right to remain silent and that he had a right to exercise the rights granted him under the Constitution. The jury was further cautioned not to weigh Beard's alleged failure to explain the discrepancies against him in its deliberations.

Given the circumstances surrounding the reception of the evidence here, it is the contention of appellee that the *plain error* holding of *Walker* is inapposite, and that we should apply the harmless error doctrine applied in Boeckenhaupt v. United States, 4 Cir. 1968, 392 F.2d 24, cert. denied 393 U.S. 896, 89 S.Ct. 162, 21 L.Ed.2d 177.

If this were the sole ground of appeal it is probable that we would accept the appellee's position and decline to reverse for this reason. Obviously in the present situation all the potentials for prejudice that existed in *Walker* were not present. Only one answer of the agent is objected to here. No reference was made in jury summation or elsewhere to the statement of the agent. The jury was carefully and meticulously cautioned by the trial judge that it could not penalize the defendant for exercising constitutional rights. But since the matters already discussed require reversal in any event, we merely direct that in any retrial of these issues under another indictment, court and government counsel be alert to prevent recurrence of a similar incident. No legitimate evidentiary purpose was served by the questions and answers.

Appellant's additional argument that the evidence is insufficient to support conviction is not discussed in view of the possibility of another trial.

The judgment is reversed for further proceedings not inconsistent herewith.

---

12. The relevant testimony is as follows:
    QUESTION: In regards to Government's Exhibits #18, 19, 20, and 21, and the other four exhibits—I have forgotten what numbers they are; I believe 28, 29, 30 and 31, the four bank statements of December through March —December 1966 through March 1967 —did Mr. Beard say anything to you about the differences when you asked him about the differences?
    ANSWER: No, sir. He didn't make any comment at all.
    QUESTION: Did you ever have another conversation with Mr. Beard after the date that you previously mentioned?
    ANSWER: Yes, sir, I talked with him between—I believe it was August 1, 1967.