Nelrie Byrd CARROLL, Appellant,

v.

The STATE of Texas, State.

Nos. 2–95–467–CR, 2–95–468–CR.

Court of Appeals of Texas,
Fort Worth.

May 29, 1997.

Ronald Aultman, Matthew Waddell, Fort Worth, for Appellant.

Tim Curry, Criminal District Attorney, Betty Marshall, Charles M. Mallin, Assistant Chiefs of the Appellate Section, Sylvia Mandel, Terry Barlow, Bill Durkin, Assistant Criminal District Attorneys, Fort Worth, for Appellee.

Before DAY, DAUPHINOT and RICHARDS, JJ.

## OPINION

RICHARDS, Justice.

This is an appeal from the sentences assessed by the trial court following two "open" guilty pleas entered by appellant. We withdraw our prior opinion and judgments of February 13, 1997 and substitute the following in their place.

In a nonnegotiated plea to the court, appellant pleaded guilty to two counts of delivery of marihuana. The trial court[1] accepted her pleas and sentenced her to concurrent five-year sentences and a $5,000 fine. Appellant appeals the punishment portion of the judgments, alleging the court erred by coercing her to testify at the sentencing phase of her hearing. We reverse and remand for new sentencing.

### DID APPELLANT WAIVE HER RIGHT TO APPEAL?

▰ The initial question we must address is whether appellant waived her right to appellate review. The State contends that under the "*Helms* Rule," appellant waived her right to appeal any nonjurisdictional defects in the proceedings by voluntarily pleading guilty. *See Helms v. State*, 484 S.W.2d 925, 927 (Tex.Crim.App.1972). The State correctly asserts that *Helms* still controls the appealability of nonnegotiated pleas of guilty.[2] *See King v. State*, 687 S.W.2d 762, 765 (Tex.

---

1. The judge presiding in the trial court was a visiting judge sitting by assignment.

2. The *Helms* rule no longer controls the appealability of negotiated plea agreements. *See* TEX. R.APP. P. 40(b)(1).

Crim.App.1985); *Lynch v. State,* 903 S.W.2d 115, 118 (Tex.App.—Fort Worth 1995, no pet.).

■ The *Helms* rule provides that where a guilty plea is entered and there is no plea bargain, any nonjurisdictional error *occurring before the entry of the plea* is waived. *See Lynch,* 903 S.W.2d at 116. However, there is no jurisdictional bar to appealing matters *following* a nonnegotiated guilty plea. *See Jack v. State,* 871 S.W.2d 741, 744 (Tex.Crim.App.1994).

The alleged error in this case occurred at the sentencing hearing nearly three months *after* appellant pleaded guilty. Consequently, we must address the merits of appellant's point of error. *See id.* (holding court of appeals erred in not reaching merits of appellant's contention that court improperly admitted evidence of unadjudicated extraneous offenses at sentencing hearing after open plea).

### WAS APPELLANT'S TESTIMONY AT THE PUNISHMENT PHASE COERCED?

■ In her first point of error, appellant argues that the trial court erred in coercing her to testify at the punishment phase of her plea hearing.

Appellant pleaded guilty on July 28, 1995, and testified, pursuant to a written waiver of her right against self-incrimination, that the information contained in each indictment was true and that she was guilty of the charged offenses. This hearing was designated "Hearing on Defendant's Open Pleas of Guilty to Court." At the conclusion of the hearing that day, the trial court: (1) granted appellant's application for a presentence investigation; (2) found there was sufficient evidence to justify a finding of guilt; but (3) reserved the right to make a formal finding of guilt until the completion of the presentence investigation requested by the defense. Three months later on October 13, 1995, following the completion of the presentence investigation, the court proceeded to the sentencing phase of the hearing, designated in

the statement of facts as "Final Determination of Guilt/Innocence and Punishment Phase."

At this phase of the hearing, in the following exchange, the trial court advised defense counsel that if appellant invoked her privilege against self-incrimination, the court would consider that invocation as a circumstance against her when determining her punishment:

[PROSECUTOR]: ... [T]he State would call the defendant.

THE COURT: All right. Do you tender your client?

[DEFENSE COUNSEL]: *Your Honor, I hate to say this, but do I have to?*

THE COURT: *Well, I think if you don't, it's going to reflect very seriously on the Court's decisions here.*

[DEFENSE COUNSEL]: Your Honor, we do voluntarily offer the defendant.

THE COURT: All right. Thank you. [Emphasis added.]

Thereafter, appellant was subjected to rigorous questioning by the State. In refusing to probate appellant's sentence, the trial judge stated that he believed appellant lied to the probation officer who compiled the presentence report and that she lied again during her testimony at the sentencing phase: "I don't think you can meet [the conditions of] probation either, because you lied here. You lied to me."

■ It is well-established that a waiver of the Fifth Amendment right at the guilt-innocence phase of a trial does not extend to the punishment phase. *See Wilkens v. State,* 847 S.W.2d 547, 553 (Tex.Crim.App.1992), *cert. denied,* 507 U.S. 1005, 113 S.Ct. 1646, 123 L.Ed.2d 268 (1993) ("A defendant has a separate and distinct Fifth Amendment right against self-incrimination at the punishment phase."); *Beathard v. State,* 767 S.W.2d 423, 431–32 (Tex.Crim.App.1989); *Brumfield v. State,* 445 S.W.2d 732, 734 (Tex.Crim.App. 1969).

■ It is equally well-established that the Fifth Amendment[3] prohibits increased

3. The self-incrimination clause of article I, section 10 of the Texas Constitution gives no greater rights than does the Fifth Amendment of the United States Constitution. *See Olson v. State,*

sentences due to the accused's refusal to testify.[4] *E.g., United States v. Heubel,* 864 F.2d 1104, 1111 (3d Cir.1989); *United States v. Safirstein,* 827 F.2d 1380, 1388–89 (9th Cir.1987); *United States v. Wright,* 533 F.2d 214, 216 (5th Cir.1976). Further, "[a]ny effort by the State to compel [a defendant] to testify against his will at the sentencing hearing clearly would contravene the Fifth Amendment." *Estelle v. Smith,* 451 U.S. 454, 463, 101 S.Ct. 1866, 1873, 68 L.Ed.2d 359, 369 (1981).

The trial court's warning to defense counsel at the punishment phase of the hearing that if appellant invoked her Fifth Amendment privilege at sentencing, such an event would "reflect very seriously" on the court's sentencing decisions conflicts with these well-established principles.

### DID APPELLANT WAIVE HER RIGHT TO CLAIM THE PRIVILEGE?

The State suggests there are three reasons why appellant waived her privilege in the trial court: (1) appellant could not invoke her privilege at the sentencing phase because she previously executed a written waiver of her right not to testify; (2) because guilty plea hearings are "unitary" in nature, appellant lost all rights to claim the privilege at sentencing when she testified in support of her guilty plea at the guilt-innocence phase of the hearing; and (3) because appellant did not raise a coercion objection in the trial court, she waived any error.

■ We now address those concerns. Prior to entering her guilty plea, appellant signed a written waiver of her right against self-incrimination:

I waive my right not to incriminate myself, agree to testify if called as a witness and judicially confess under oath that each and every allegation contained in the indictment or information which is not waived by the State is true and I am guilty of the offense as charged.

In compliance with this waiver, appellant testified that she was "guilty" of the charges against her. It is clearly evident the waiver, by its terms, was limited to the issues to be determined at the guilt-innocence phase. Appellant did not sign a waiver of her right to claim her privilege on sentencing issues. Moreover, because the defendant's plea was an "open," i.e., a nonnegotiated plea, it cannot be said the State's interests at the initial plea could have, in any way, been compromised by the exercise of appellant's privilege at sentencing. Therefore, we hold appellant did not waive her right against self-incrimination at the sentencing portion of the plea hearing when she agreed, in writing, to testify and confess under oath to the allegations contained in the indictment.

■ The State's second waiver argument is that appellant could not have invoked her privilege because this was a "unitary" hearing. The State's argument is premised on the notion that if there was no sentencing phase, there was no right to exercise her privilege against self-incrimination. In support of its position, the State cites *Washington v. State,* 893 S.W.2d 107, 109 (Tex.App.—Dallas 1995, no pet.). The defendant in *Washington* entered an open plea of guilty to possession of cocaine and pleaded true to two enhancement paragraphs alleging prior felony convictions. Later, when the State filed a motion to proceed to adjudication of guilt, Washington pleaded true to the allegations in the State's motion, but requested that the trial court allow him to withdraw his pleas of true to the enhancement paragraphs. *Id.* The trial court denied the request and proceeded to sentencing. The court of appeals held that Mr. Washington was not entitled to withdraw his pleas of true to the enhancement paragraphs because once he pleaded guilty to the primary offense and true to the enhancement allegations, the trial became a "unitary" proceeding. *Id.* Therefore, the time during which the plea of true to the enhancement paragraphs could be withdrawn

484 S.W.2d 756, 762 (Tex.Crim.App.1972) (op. on reh'g); *Delgado v. State,* 849 S.W.2d 904, 906 (Tex.App.—Fort Worth 1993, pet. ref'd).

4. The Texas Code of Criminal Procedure also prohibits increased sentences due to the ac-

cused's refusal to testify. *See* TEX.CODE CRIM. PROC. ANN. art. 38.08 (Vernon 1979) ("[T]he failure of any defendant to so testify shall not be taken as a circumstance against him. . . .").

was the same as the time during which the plea of guilty to the primary offense could be withdrawn. The effect of the court's holding is that pleas to a charging instrument's primary offense and enhancement allegations may not be "piece-mealed." *Id.* at 108–09.

*Washington* is both factually and legally distinguished from the issue presented here. Nothing in *Washington* indicates the sentencing phase following a nonnegotiated plea and the portion of the hearing at which the defendant enters the plea of guilty are "unitary" for purposes of determining whether the defendant's privilege against self-incrimination may be asserted. The holding merely provides that such proceedings are "unitary" in the sense that the defendant's pleas of guilt to the underlying offense and true to the enhancement allegations were to be considered timed together for the purposes of his attempt to withdraw the latter plea.[5]

It would seem incongruous to hold that a defendant must waive her privilege as to the sentencing stage in order to waive her privilege and testify in support of her nonnegotiated plea of guilt. Not only do we believe common sense requires viewing the proceedings as having two phases when determining whether a privilege may be claimed, it appears the case authority also requires this distinction. In *Pady v. State*, 908 S.W.2d 65 (Tex.App.—Houston [1st Dist.] 1995, no pet.), a sister court of appeals addressed an issue concerning the scope of a punishment hearing after an appellant pleads guilty and a presentence investigation is ordered. The trial court there advised defense counsel that "once you've proceeded to plead it and ask that a presentence investigation be conducted," the defense is not entitled to put on any evidence. *Id.* at 66. In effect, the trial court held that because the proceedings were uni-

tary, by testifying in support of his plea, the defendant was afforded his right to testify. The court of appeals disagreed, noting that article 38.08 "applies not only at the guilt phase of the trial, but also at the punishment phase of the trial." *Id.* at 67. Implicit in *Pady* is an acknowledgment that there are two phases in such proceedings. One is the guilty plea phase. The second is the phase conducted after the presentence report is completed.[6]

This interpretation of the Fifth Amendment's protection squares with the view expressed in other state jurisdictions. *See, e.g., State v. Tinkham*, 74 Wash.App. 102, 871 P.2d 1127, 1130 (1994) ("A defendant who has pleaded guilty, but awaits sentencing, is allowed to invoke the Fifth Amendment privilege against self-incrimination in order to prevent the possible enhancement of his sentence.").

Moreover, implicit in the trial court's exchange with defense counsel in the instant case was the acknowledgment by the court that appellant *did* have a right to invoke her privilege against self-incrimination at the "final adjudication of guilt and punishment" proceeding. Immediately before counsel was advised that his client's failure to testify at the punishment proceeding would be held against her, the trial court inquired, "Do you tender your client?" This implicitly shows the trial court did not believe appellant's testimony at the initial proceeding prevented her from asserting her privilege at the "final adjudication of guilt and punishment" proceeding. In other words, the trial court acknowledged that appellant had the right to claim the privilege. The court, however, sought to dissuade her from invoking the privilege when it warned that any claim of

---

**5.** A second case cited by the State, *Ricondo v. State*, 634 S.W.2d 837 (Tex.Crim.App.1982) (op. on reh'g), is similarly distinguished. In *Ricondo*, the Court of Criminal Appeals noted that pleas of guilt before judges and juries have always been "unitary" proceedings. The question addressed in *Ricondo* was whether a defendant who changed his plea from not guilty to guilty during the middle of his trial should have been admonished as to the full range of punishment. The court held that under what it characterized the "peculiar" and "unorthodox" procedural facts of the case, particularly the trial court's decision to

permit the defendant to postpone entering his plea to the enhancement counts until after the jury found him guilty, there was no reversible error. *Id.* at 842.

**6.** To avoid confusion, it would appear the better practice to characterize these two parts of a guilty plea hearing as different "phases" of a "unitary" hearing. Such a characterization avoids the confusion of defining such hearings as "unitary" for most purposes, but "bifurcated" for others.

the privilege would be held as a circumstance against her. There is no indication the State disagreed with the trial court's determination that appellant had the right to assert her privilege. Only on appeal does the State allege appellant had no right to refuse to testify at the punishment phase. Now the State argues that unless we rule appellant waived her privilege, defendants will be able to request presentence investigations, "then tell the probation officer anything they want without fear of negative consequences." We disagree. If the State believes the defendant lied to the court's probation officer during the presentence investigation, and the defendant subsequently invokes his or her privilege against self-incrimination, the State may always offer direct evidence of any such "lies" through the testimony of the probation officer.

■ In its final theory of waiver, the State alleges appellant's failure to lodge a specific objection in the trial court precludes appellate review. Rules requiring a party to make a specific objection in the trial court as a prerequisite to appellate review are rooted in the well-established principle that appellate courts are courts of *review,* and that trial judges should be given an opportunity to correct any errors occurring in trial proceedings before complaint is taken to a higher court. Application of those rules makes perfect sense in normal instances of trial error; however, the instant issue presents a rare example of an issue where fundamental fairness requires an exception to the rule.

The view that a defendant's failure to object to denial of the right against self-incrimination does not necessarily constitute a waiver of the right to assert such error on appeal was supported inferentially in *O'Connor v. Ohio,* 385 U.S. 92, 93, 87 S.Ct. 252, 253–54, 17 L.Ed.2d 189, 191 (1966) (holding state procedural rule requiring trial objections could not bar an appellant from asserting a violation of his constitutional privilege against self-incrimination), and expressly in *Walker v. United States,* 404 F.2d 900, 903 (5th Cir. 1968) (holding objection unnecessary where violation of rights guaranteed by Fifth

Amendment "is so improper and prejudicial as to amount to plain error effecting [a defendant's] substantial rights"). Under the particular circumstances of the instant case we believe a specific trial objection was not required. This is not a case where an objection could have led the trial court to "cure" prosecutorial misconduct. The error was made by the trial court itself and took the form of a direct threat to defense counsel by the trial court that any claim by appellant of her privilege against self-incrimination would be held against her. At the time this threat was conveyed, the trial court was aware the defense wished to claim the privilege. Under these facts, we cannot fathom how a specific objection could have lead to a cure of the coercive nature of the direct threat pronounced by the trial judge in open court. Our record shows the trial court (1) was aware of appellant's right to claim the privilege; (2) was aware that appellant would attempt to exercise that right, and (3) in a direct attempt to dissuade her from exercising that right, expressly threatened to hold any invocation of the right as a circumstance against her. Thus, the record adequately supports a claim that appellant was coerced into waiving a fundamental right.

## CONCLUSION

We hold that, as a matter of law, the trial court improperly coerced appellant into testifying at the sentencing phase of the hearing. The trial court threatened an unconstitutional act when it implied that it would consider an assertion by appellant of her constitutional right as a circumstance against her. Because the record indicates the trial court relied on the coerced testimony in refusing to probate her sentences, we cannot conclude beyond a reasonable doubt that this error made no contribution to appellant's sentences. *See* TEX.R.APP. P. 81(b)(2).

Because we hold that the trial court erred in coercing appellant to testify at the sentencing phase of the hearing, we reverse the sentences imposed by the trial court and

remand both cases to the trial court for new sentencing.[7]

7. Because we reverse and remand based on appellant's first point of error, we do not reach her second point of error.