Nellrie Byrd CARROLL, Appellant,

v.

The STATE of Texas.

Nos. 359–00, 360–00.

Court of Criminal Appeals of Texas,
En Banc.

March 7, 2001.

Danny D. Burns, Fort Worth, for appellant.

Sylvia Mandel, Asst. DA, Fort Worth, Matthew Paul, Austin, for the State.

## OPINION

JOHNSON, J., delivered the opinion of the Court, in which KELLER, P.J., and MEYERS, PRICE, HOLLAND, WOMACK, HERVEY, and HOLCOMB, JJ., joined.

Appellant pled guilty, in a non-negotiated plea to the trial court, to two counts of delivery of marijuana. The trial court accepted her pleas and sentenced her to concurrent five-year sentences and a $5,000 fine. On appeal, appellant appealed the punishment portion of the judgments, alleging that the trial court erred by coercing her to testify at the sentencing phase of her hearing. The court of appeals reversed and remanded for a new sentencing proceeding. *Carroll v. State*, 946 S.W.2d 879 (Tex.App.—Fort Worth 1997) (*Carroll I*). On petition for discretionary review, we reversed the judgment of the court of appeals, and remanded the cause to that court. *Carroll v. State*, 975 S.W.2d 630 (Tex.Crim.App.1998) (*Carroll II*). Approximately six and one-half months after that decision, the United States Supreme Court handed down its decision in *Mitchell v. United States*, 526 U.S. 314, 119 S.Ct. 1307, 143 L.Ed.2d 424 (1999), in which it held that a criminal defendant retains the fifth amendment right to remain silent at a sentencing proceeding, even after a plea of guilty, and that a trial court may not draw an adverse inference from such silence.[1] The majority explicitly refused to rule on the question of whether the invocation of the right to silence could bear on issues other than self-incrimination, such as lack of remorse and acceptance of responsibility, which are factors under the federal sentencing guidelines. *Id.* at 330, 119 S.Ct. at 1316.

Based on *Mitchell*, the court of appeals initially reversed and remanded for a new sentencing proceeding. *Carroll v. State*, 999 S.W.2d 630 (Tex.App.—Fort Worth 1999) (*Carroll III*). Thereafter, pursuant to TEX.R.APP.P. 50, the court of appeals withdrew its opinion and handed down a new decision affirming appellant's convictions and sentences. *Carroll v. State*, 12 S.W.3d 92 (Tex.App.—Fort Worth 1999) (*Carroll IV*). We granted appellant's petition for discretionary review[2] to consider whether the court of appeals' decision conflicts with *Mitchell v. United States*, *supra*. We reverse and remand.

## PROCEDURAL HISTORY

On July 28, 1995, appellant pled guilty and testified, pursuant to a written waiver of her right against self-incrimination, that the information contained in each indictment was true and that she was guilty of the charged offenses. On October 13, 1995, following the completion of the presentence investigation, the court held a sentencing hearing and advised defense

---

1. All nine justices agreed that a defendant retains a right to remain silent. *Mitchell*, 526 U.S. at 316–17, 325–27, 119 S.Ct. at 1309, 1313–14; *Id.* at 331, 119 S.Ct. at 1316 (Scalia, J., joined by Rehnquist, C.J., and O'Connor and Thomas, JJ., dissenting). The four dissenters would have allowed an adverse inference to be drawn from such silence. *Id.* at 331–41, 119 S.Ct. at 1316–21 (Scalia, J.,

joined by Rehnquist, C.J., and O'Connor and Thomas, JJ., dissenting).

2. The precise ground for review granted is whether "[t]he court of appeals has decided an important question of law that is contrary to the Supreme Court of the United States' holding in *Mitchell v. United States*."

counsel that if appellant invoked her privilege against self-incrimination, the court would consider that invocation as a circumstance against her when determining her punishment.

On appeal, appellant complained that the trial court erred by coercing her to testify at the sentencing phase of her hearing. The court of appeals held that a waiver of the fifth amendment right at the guilt-innocence phase of a trial does not extend to the punishment phase; that the fifth amendment prohibits increased sentences due to a defendant's refusal to testify; and that the trial court's warning to defense counsel regarding appellant's invocation of her privilege against self-incrimination violated appellant's fifth amendment rights. *Carroll I*, 946 S.W.2d at 881–2.

In ruling on the state's petition for discretionary review, this Court held that once appellant's guilty plea was entered, the proceeding became "unitary" to determine the issue of punishment, so that appellant's plea extended to the issue of punishment. *Carroll II*, 975 S.W.2d at 631–32. We also stated that, based on a written waiver signed by appellant, appellant had relinquished her fifth amendment rights, and that she had done so voluntarily. *Id.* at 632. We then remanded the cause to the court of appeals. *Id.*

Before the court of appeals handed down its opinion on remand (*Carroll III*), the United States Supreme Court decided *Mitchell, supra.* Based on *Mitchell*, the court of appeals initially held that the trial court had improperly coerced appellant into testifying at the sentencing portion of the hearing, and that, because the trial court had relied on that coerced testimony in refusing to probate her sentences, such error was harmful. *Carroll III*, 999 S.W.2d at 636. The state filed a petition for discretionary review and, pursuant to Rule 50, the court of appeals withdrew its

opinion. In its substitute opinion (*Carroll IV*), the court of appeals questioned whether our decision in *Carroll II* could be reconciled with *Mitchell*, but deferred to our decision, as well as to the doctrine of the "law of the case," and affirmed appellant's convictions and sentences. *Carroll IV*, 12 S.W.3d at 96–7. Appellant then filed a petition for discretionary review, which we granted.

### ANALYSIS

■ Under the doctrine known as "law of the case," "an appellate court's resolution of a question of law in a previous appeal of the same case will govern the disposition of the same issue when raised in a subsequent appeal." *Howlett v. State*, 994 S.W.2d 663, 666 (Tex.Crim.App.1999) (citations omitted). However, the doctrine's application is not inflexible. *Id.* One of the circumstances in which an appellate court may reconsider its earlier disposition of a point of law is when there has been a change in the controlling law between the time of the first appellate determination and the time that the case is brought on a second appeal. *See* 5 Am. Jur.2d *Appellate Review* § 613 (1995); E.H. Schopler, Annotation, *Erroneous Decision as Law of the Case on Subsequent Appellate Review*, 87 A.L.R.2d 271, 357–58, 1963 WL 13469 (1963 & Supp.2000); *Cf. In re Estate of Chavana*, 993 S.W.2d 311, 315–6 (Tex.App.—San Antonio 1999, no writ); *McCrea v. Cubilla Condo. Corp., N.V.*, 769 S.W.2d 261, 263–64 (Tex.App.—Houston [1st Dist.] 1988, writ denied). *Mitchell* constitutes such an intervening decision, and our decision in *Carroll II* is not, therefore, binding "law of the case."

■ In *Carroll II*, we held that, pursuant to our precedents,

> in a unitary trial where a defendant has pled guilty there exists no per se "punishment phase." In fact, unitiza-

tion of the trial, where a defendant pleads guilty to a felony charge before a jury or judge, admits the existence of all facts necessary to establish guilt and, in such cases, the introduction of testimony by the State is to enable the jury or judge intelligently to exercise discretion in the assessment of punishment. Since appellant openly pled to the offenses in the indictment she is not eligible for a bifurcated trial ... but is instead subject to the rules of a unitary proceeding. Therefore, appellant's waiver extended to this proceeding.

*Carroll II,* 975 S.W.2d at 631–2 (citations omitted). That is, once appellant pled guilty to the offense, she waived her right against self-incrimination as to the issue of punishment, as well as to guilt/innocence. However in *Mitchell,* the Supreme Court explicitly rejected the proposition that "incrimination is complete once guilt has been adjudicated." *Mitchell,* 526 U.S. at 325, 119 S.Ct. at 1313 (citing *Estelle v. Smith,* 451 U.S. 454, 462, 101 S.Ct. 1866, 68 L.Ed.2d 359 (1981)). It stated that the proper rule is that "[a]lthough the witness has pleaded guilty to a crime charged but has not been sentenced, his constitutional privilege remains unimpaired." *Mitchell,* 526 U.S. at 326, 119 S.Ct. at 1314. It went on to explain:

> It is true, as a general rule, that where there can be no further incrimination, there is no basis for the assertion of the privilege. We conclude that principle applies to cases in which the sentence has been fixed and the judgment of conviction has become final. If no adverse consequences can be visited upon the convicted person by reason of further testimony, then there is no further incrimination to be feared.

Where the sentence has not yet been imposed a defendant may have a legitimate fear of adverse consequences from further testimony. As the Court stated in *Estelle:* "Any effort by the State to compel [the defendant] to testify against his will at the sentencing hearing clearly would contravene the Fifth Amendment." *Estelle* was a capital case, but we find no reason not to apply the principle to noncapital sentencing hearings as well. The essence of this basic constitutional principle is the requirement that the State which proposes to convict and punish an individual produce the evidence against him by the independent labor of its officers, not by the simple, cruel expedient of forcing it from his own lips.

\* \* \* \*

Our rule is applicable whether or not the sentencing hearing is deemed a proceeding separate from the Rule 11 hearing, an issue we need not resolve. *Id.* (citations and internal quotation marks omitted). In the instant case, appellant had pled guilty to the offense charged, but her sentence had not been determined. Thus, based on *Mitchell,* we hold that appellant's guilty plea to the offense charged did not waive her right against self-incrimination as to sentencing.

■ *Mitchell* also affects our additional prior finding that, by signing the written waiver, appellant voluntarily waived her right against self-incrimination as to sentencing. The waiver which appellant signed included the following:

> 10. Pursuant to Article 1.14 of the Texas Code of Criminal Procedure, I waive all rights of form, substance or procedure given me by law.
> \* \* \* \*
> 12. I waive my right not to incriminate myself, agree to testify if called

as a witness and judicially confess under oath that each and every allegation contained in the indictment or information which is not waived by the State is true and I am guilty of the offense as charged.

In *Carroll II,* after holding that appellant's plea of guilty constituted a waiver of her right regarding self-incrimination as to sentencing, we went on to note that the provision of the signed waiver referring to "all rights of form, substance or procedure given me by law" constituted a voluntary waiver to her right against self-incrimination as to sentencing. *Carroll II,* 975 S.W.2d at 632. Prior to *Mitchell,* however, it was not settled law that a defendant had a federal constitutional right to remain silent at sentencing. *See* Anthony J. Phelps, Note, *Applicability of the Fifth Amendment Privilege Against Self–Incrimination at Sentencing:* Mitchell v. United States *Settles the Conflict,* 38 BRANDEIS L.J. 107 (1999/2000). Thus, it was unclear at the time of her plea whether appellant had such a right to silence which could be waived.

■ In addition to the general waiver clause, the state's plea form contained a clause which specifically warned appellant about waiver of her right against self-incrimination as to guilt. Her right to silence as to guilt and that right's corollary, that in a criminal case no negative inference is permitted from a defendant's invocation of the right to silence, have been settled law for more than thirty years. *See Griffin v. California,* 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965); *Mitchell,* 526 U.S. at 330, 119 S.Ct. at 1316 ("there can be little doubt that the rule prohibiting an inference of guilt from a defendant's rightful silence has become an essential feature of our legal tradition"); *Id.* at 331–32, 119 S.Ct. at 1316–17 (Scalia, J., dissenting) (acknowledging that "no-ad-verse-inference" rule has found "wide acceptance in the legal culture"). The issue of whether the right to silence continued at sentencing after a waiver of that right during the guilt phase was unsettled at the time of appellant's plea; it became settled law only after her plea. Thus, appellant was explicitly warned about a waiver of the long-standing right to silence at the guilt phase, but was not given a similar specific warning regarding a right to silence at sentencing. Indeed, she was told by the trial court that she did not have such a right. *Carroll I,* 946 S.W.2d at 884. After *Mitchell,* we cannot conclude that the facts presented here show that appellant knowingly, voluntarily, and intelligently waived her federal constitutional right against self-incrimination at sentencing. Neither can we conclude, after *Mitchell,* that the trial court may consider invocation by appellant of her federal constitutional right to silence as a circumstance against her when determining her punishment.

Appellant's ground for review is sustained. The judgment of the court of appeals is reversed, and the cause is remanded to the court of appeals for proceedings consistent with this opinion.

MEYERS, J., filed a concurring opinion, in which PRICE, J., joined. KEASLER, J., concurred in the judgment.

MEYERS, J., delivered this concurring opinion, joined by PRICE, J.

In *Carroll v. State,* 975 S.W.2d 630 (Tex. Crim.App.1998) (referred to hereinafter as "*Carroll II*"), this Court held that upon appellant's plea of guilty the proceeding automatically became unitary. As a unitary proceeding, appellant's waiver of her right against self-incrimination extended to the entire proceeding. In other words, it was this Court's view that when the proceeding is unitary, a waiver of rights necessarily went to the issues of both guilt

and punishment—a waiver could not be had as to one but not the other. The Court did not explain why such a waiver *could not* apply to the *issue of guilt* but not to the *issue of punishment*, but viewed the matter as self-evident by virtue of the fact that both issues were litigated in a single proceeding: [1]

1. Ironically, although the Court's reasoning in *Carroll II* rested on the notion that the proceeding was unitary, the fact is, the proceeding in the instant case was *not* unitary, but was bifurcated. *Carroll II, supra* (Meyers, J., dissenting). Whether or not appellant was entitled to a bifurcated proceeding, she nonetheless got one:

    Appellant pleaded guilty on July 28, 1995, and testified, pursuant to a written waiver of her right against self-incrimination, that the information contained in each indictment was true and that she was guilty of the charged offenses. This hearing was designated "Hearing on Defendant's Open Pleas of Guilty to Court." At the conclusion of the hearing that day, the trial court: (1) granted appellant's application for a presentence investigation; (2) found there was sufficient evidence to justify a finding of guilt; but (3) reserved the right to make a formal finding of guilt until the completion of the presentence investigation requested by the defense. Three months later on October 13, 1995, following the completion of the presentence investigation, the court proceeded to the sentencing phase of the hearing, designated in the statement of facts as "Final Determination of Guilt/Innocence and Punishment Phase."

*Carroll v. State*, 946 S.W.2d 879, 881 (Tex. App.—Fort Worth 1997). In other cases where a bifurcated proceeding erroneously occurred following a plea of guilty or nolo contendere, we have made note of the aberrance, but never declared it was actually a unitary proceeding simply because it *should* have been:

    Despite the fact that pleas of guilty in felony cases either before a judge or jury have always been unitary, some confusion has existed among the bench and bar since the advent of Article 37.07, V .A.C.C.P. Records reaching this court frequently show courts bifurcating bench trials where the plea is guilty. Often the court will hear evidence, declare the defendant guilty, order a pre-

... [W]here a defendant pleads guilty either before a judge or jury the trial becomes "unitary." And as a result, there does not exist a separate punishment phase. Therefore, we hold that appellant's written waiver of her Fifth Amendment right not to self-incriminate applied to the entire criminal adjudica-

sentence investigation and sometimes months later re-convene the "penalty stage" of the guilty plea, allowing the State and defense to offer evidence as to punishment or guilt.

*Ricondo v. State*, 634 S.W.2d 837, 842 (Tex. Crim.App.) (opinion on reh'g); *cf. Mason v. State*, 604 S.W.2d 83, 89–90 (Tex.Crim.App. 1979) (Clinton, J., dissenting)(criticizing procedure of trial court in part because "what the statutes fashion as a unitary trial on a plea of guilty was bifurcated" where plea hearing was held 3 months before hearing on presentence investigation and even later pronouncement of sentence); *Arismendez v. State*, 595 S.W.2d 535 (Tex.Crim.App.1980) (defendant pled nolo contendere but proceeding on punishment was erroneously bifurcated from guilt); *Nunez v. State*, 565 S.W.2d 536, 539 (Tex.Crim.App.1978)(Onion, P.J., concurring)(noting proceeding was bifurcated where, despite defendant's plea of guilty, trial court recessed hearing after finding defendant guilty in order that pre-sentence investigation report could be prepared); *Frame v.. State*, 615 S.W.2d 766, 767 fn. 1 (Tex.Crim.App. 1981) (noting "trial judge incorrectly bifurcated the trial" following plea of guilty); *Bean v. State*, 563 S.W.2d 819, 821 (Tex.Crim.App. 1978) (Onion, P.J., concurring)(referring to proceedings as bifurcated where, after finding defendant guilty pursuant to guilty plea, trial court recessed for several months in order to obtain presentence investigation reports); *Ring v. State*, 450 S.W.2d 85, 86–87 (Tex. Crim.App.1970) (noting "at the outset a somewhat unusual procedure was here employed [in] accord[ing appellant] a bifurcated trial at his request upon a plea of guilty"); *Allen v. State*, 474 S.W.2d 480, 482 (Tex.Crim.App. 1972) (noting "[t]he holding of a bifurcated trial in this [guilty plea] case was unusual"); *Thomas v. State*, 477 S.W.2d 881, 882 (Tex. Crim.App.1972) (where defendant entered plea of guilty and bifurcated trial held, we noted "this was unnecessary").

tion proceeding including the assessment of punishment.

*Carroll II*, 975 S.W.2d at 632. Because there was not a separate punishment "phase," the court held the waiver necessarily applied to both guilt and punishment.

But the Supreme Court made clear that a waiver of one's right against self-incrimination in the context of a guilty plea, turns not upon whether the proceeding in which it is executed is unitary or bifurcated, but upon the nature of what is given up by the guilty plea and the principles underlying one's constitutional right against self-incrimination:

> There is no convincing reason why the narrow inquiry at the plea colloquy should entail such an extensive waiver of the privilege. Unlike the defendant taking the stand, who "cannot reasonably claim that the Fifth Amendment gives him ... an immunity from cross-examination on the matters he has himself put in dispute," *id.*, at 155–156, 78 S.Ct. 622, the defendant who pleads guilty puts nothing in dispute regarding the essentials of the offense. Rather, the defendant takes those matters out of dispute, often by making a joint statement with the prosecution or confirming the prosecution's version of the facts. Under these circumstances, there is little danger that the court will be misled by selective disclosure....

\* \* \*

Where the sentence has not yet been imposed a defendant may have a legitimate fear of adverse consequences from further testimony. As the Court stated in Estelle: "Any effort by the State to compel [the defendant] to testify against his will at the sentencing hearing clearly would contravene the Fifth Amendment." 451 U.S. at 463, 101 S.Ct.

1866.... The Fifth Amendment by its terms prevents a person from being "compelled in any criminal case to be a witness against himself." U.S. Const., Amdt. 5. To maintain that sentencing proceedings are not part of "any criminal case" is contrary to the law and to common sense. As to the law, under the Federal Rules of Criminal Procedure, a court must impose sentence before a judgment of conviction can issue. See Rule 32(d)(1) ("A judgment of conviction must set forth the plea ... and the sentence"); cf. *Mempa v. Rhay*, 389 U.S. 128, 134, 88 S.Ct. 254, 19 L.Ed.2d 336 (1967). As to common sense, it appears that in this case, as is often true in the criminal justice system, the defendant was less concerned with the proof of her guilt or innocence than with the severity of her punishment. Petitioner faced imprisonment from one year upwards to life, depending on the circumstances of the crime. To say that she had no right to remain silent but instead could be compelled to cooperate in the deprivation of her liberty would ignore the Fifth Amendment privilege at the precise stage where, from her point of view, it was most important. Our rule is applicable whether or not the sentencing hearing is deemed a proceeding separate from the Rule 11 hearing, an issue we need not resolve.

\* \* \*

... The rule against adverse inferences is a vital instrument for teaching that the question in a criminal case is not whether the defendant committed the acts of which he is accused. The question is whether the Government has carried its burden to prove its allegations while respecting the defendant's individual rights. The Government retains the burden of proving facts rele-

vant to the crime at the sentencing phase and cannot enlist the defendant in this process at the expense of the self-incrimination privilege.

*Mitchell v. United States,* 526 U.S. 314, 322–30, 119 S.Ct. 1307, 143 L.Ed.2d 424 (1999). The Court in *Carroll II* did not mention these considerations or anything remotely like them. As the court of last resort for criminal law matters in the State of Texas, we ought to be concerning ourselves with addressing exactly these types of questions. Whether we would have ultimately reached the same conclusions as the United States Supreme Court did in *Mitchell* is not the point; but we ought to have at least recognized and discussed to some extent the constitutional principles implicated.

With these comments, I join the opinion of the Court.