IN THE COURT OF CRIMINAL APPEALS


OF TEXAS









NO. 639-03 , 773-03 & 774-03


 



KELVIN DEWAYNE BOWIE, Appellant




vs.




THE STATE OF TEXAS







ON APPELLEE 'S AND STATE'S 

PETITIONS FOR DISCRETIONARY REVIEW


FROM THE FIFTH AND TWELFTH COURTS OF APPEALS


DALLAS COUNTY AND SMITH COUNTY



 Cochran, J., filed a dissenting opinion, in which Keasler & Hervey, JJ., joined.



OPINION 


 

 I respectfully dissent. I conclude that appellant's testimony in the punishment phase of a "timely pass for plea" proceeding (in which
appellant had an absolute right to withdraw his plea if he did not like the sentence) did not constitute statements made in a Rule
11-type plea proceeding. Therefore, his testimony was not protected by Texas Rule of Evidence 410(3). I would affirm the
decision by the Tyler Court of Appeals (1) and reverse the conflicting decision by the Dallas Court of Appeals. (2)

I.


 At the punishment stage of this "timely pass for plea" proceeding, the State called several witnesses to testify to facts supporting a
lengthy sentence. After the State rested, appellant explicitly waived his Fifth Amendment right to remain silent, and testified under
oath that he killed Michael Wideman because he was "fed up with him." Appellant explained that when he was growing up,
Wideman bullied him and took things from him, including his bicycle and a necklace. 

 Appellant testified that, on the night of the murder, he was at "Club Ice" with his cousin. Wideman was there with some of his gang
members. Wideman slapped appellant on the back of the head and took his glasses. Appellant admitted that he left the club, not
to go home to go to sleep-as he had testified under oath to the grand jury-but to find a gun. Appellant got his gun and confronted
Wideman at the Whataburger:

 Q: You went up to the Whataburger?

 A: Yes.

 Q: Tell the Judge what actually occurred when you got to the Whataburger?

 A: When I pulled up at Whataburger, he was bending over in my sister's car, and I just jumped out. I jumped out of the car and
walked up to him and shot him. I didn't even think. I just reacted.



Appellant also admitted that he lied to the grand jury about why he killed Wideman:



 Q: Now, before the Grand Jury, you testified falsely, didn't you?

 A: Yes, sir.

 Q: Now, before the Grand Jury, you testified that the reason that you shot Michael Wideman was because you were protecting
your sister?

 A: Yes, sir.

 Q: Is that the truth?

 A: No, sir.

 Q: Tell the Judge the reason why you shot Michael Wideman?

 A: Because I was tired of him picking on me and just kept on taking things from me. I just got fed up with it.

 Q: Kelvin is that the truth?

 A: Yes, sir, and I couldn't take it no more.

 Q: How long has that been going on?

 A: All of my life.

 Q: Kelvin, you took a man's life?

 A: I know.



 After appellant testified and the parties gave their punishment arguments, the trial judge announced her proposed sentence: fifty
years confinement and a $5,000 fine. Appellant visited privately with his lawyers to decide whether he wanted to accept the court's
sentence or withdraw his plea. He chose to withdraw his guilty plea, which, under the trial judge's "timely pass for plea" procedure,
he had an absolute and unilateral right to do. 

 The case was then set for a jury trial in Dallas. During the murder trial, the State was allowed to offer appellant's self-incriminatory
punishment stage testimony into evidence after the Dallas trial judge held that this testimony was not protected by Rule 410(3). 
Appellant was also indicted for perjury in Smith County for his sworn inconsistent statements before the grand jury and during the
sentencing hearing. In a pretrial hearing, the trial judge held that appellant's sentencing hearing statements were protected by Rule
410(3); that ruling gutted the State's perjury case. As noted by the majority, the Dallas Court of Appeals (reviewing the murder
conviction) and the Tyler Court of Appeals (reviewing the pretrial motion to suppress in the perjury prosecutions) reached
conflicting results on whether Rule 410(3) protected appellant's punishment stage testimony when he was allowed to withdraw his
guilty plea. 

 If a defendant's testimony during the punishment stage of this "timely pass for plea proceeding" falls under Rule 410(3) when a
defendant later unilaterally rejects the trial judge's proposed sentence, then it is absolutely protected and cannot be used against him
in either a trial on the merits of the case or in a later perjury prosecution. That was the conclusion by the Dallas Court of Appeals. 
If the punishment phase of "timely pass for plea proceeding" is not comparable to a Rule 11 proceeding, then a defendant's sworn
statements at that hearing are admissible in any future proceeding, such as a perjury prosecution, against the declarant-defendant.
That was the conclusion by the Tyler Court of Appeals. We granted discretionary review to resolve this conflict.

II.


A. A "timely pass for plea" proceeding is not "comparable" to a Federal Rule 11 plea proceeding.

 

 Although this is a close question in an unusual situation, I agree with the Tyler Court of Appeals' majority which held that the trial
court's "timely pass for plea" procedure is not a state procedure comparable to proceedings under Rule 11 of the Federal Rules of
Criminal Procedure for purposes of Tex. R. Evid 410(3). The court of appeals explained:

 Plea bargaining is the process by which the defendant in a criminal case relinquishes his right to go to trial in exchange for a
reduction in charge and/or sentence.... The plea agreement procedure used in our federal system is described in Rule 11 of the
Federal Rules of Criminal Procedure.... Rule 11 has been interpreted as an absolute prohibition on all forms of judicial participation
in or interference with the plea negotiation process.... The policy underlying Rule 11 is to allow a criminal defendant to freely
negotiate without fear that any statements he makes during these negotiations will be used against him.... The "timely pass for plea"
procedure used by the court in Bowie's murder case is not comparable to the plea agreement procedure outlined in Rule 11.... In
the "timely pass for plea" procedure, there is no give-and-take between the government's attorney on one side and the defendant
and his attorney on the other side. Rather, it is the judge who interacts with the defendant. The judge is orchestrating the entire
procedure in open court, on the record. The judge views these proceedings as a trial and personally places the defendant under
oath. No one is at liberty to lie under oath during a judicial proceeding. (3)



 I, like the Tyler Court of Appeals, do not believe that the punishment stage of the "timely pass for plea" proceeding is a Rule
11-type proceeding. A Rule 11 proceeding in federal court occurs when a defendant enters his plea of guilty or nolo contendere,
with or without a plea agreement. (4) Rule 11 does not encompass an evidentiary sentencing hearing. In Texas, an article 26.13
hearing, in which a court considers and accepts or rejects a plea agreement between the State and defense is a Rule 11-type
hearing. So too is an article 1.15 hearing in which a defendant enters a plea after waiving his right of trial by jury, the State
introduces evidence into the record showing the guilt of the defendant, and the evidence is accepted by the trial court as the basis
for its judgment. 

 The aim of both Federal Rule 11 hearings and the comparable Texas proceedings is "to ensure the integrity of the system and
prevent prosecutorial overreaching or corruption by bringing plea bargaining out into the open and providing judicial supervision." (5) 
 As a part of that appropriate judicial supervision, a trial judge-either federal or state- must satisfy himself that a defendant is
pleading guilty voluntarily and knowingly. (6) Under both federal and Texas law, a trial judge must also satisfy himself that there is a
factual basis for the guilty plea. (7) Rule 11 admonishments and inquiries are a necessary prerequisite when "the trial judge
determines whether or not to accept a proposed plea bargain." (8) The purpose of a Rule 11-type plea colloquy, then, "is to protect
the defendant from an unintelligent or involuntary plea." (9) Its purpose is not to air testimony so the trial judge may himself propose
a sentence which the parties themselves have not previously agreed to. Rule 410(3) protects the guilty or nolo plea itself and any
statements that the defendant made during this plea colloquy if the plea is later withdrawn. (10) It does not throw a tent of privilege
around the sentencing hearing.

 In this case, appellant and the State both agree that the guilty plea itself, the associated documents signed, and statements appellant
made at the time of the plea colloquy are protected under Rule 410(1) & (3). The State did not offer any statements appellant
made during the article 1.15 or 26.13 plea proceeding against him in any later proceeding. To the extent that the purpose of Rule
410 is furthered by this "timely pass for plea" procedure at all, it was satisfied by protecting the plea and statements made during the
entry of appellant's guilty plea.

B. Statements made by a defendant at a sentencing or punishment hearing are not made during a Rule 11-type
proceeding.



 Neither the parties nor the Court cite a single case from any federal or Texas jurisdiction which has held that a defendant's sworn
testimony given during a punishment hearing following an open plea (11) is protected under Rule 410(3). Generally, federal courts
have held that post-plea-agreement statements are not protected by the rule. (12) Furthermore, federal courts have held that Rule
410 does not apply during the sentencing stage of a federal proceeding. (13) If federal courts recognize that statements made during
the entry of a guilty pleaare covered by Rule 410, but that Rule 410 does not apply to sentencing hearings, it would seem that
federal courts recognize a distinction between Rule 11 plea proceedings and non-plea-agreement sentencing or punishment
hearings.

 The Supreme Court has not resolved the issue of whether Rule 11 plea proceedings are entirely distinct from sentencing hearings. 
However, in Mitchell v. United States, (14) the Court held that, in the federal system, a guilty plea does not waive the privilege
against self-incrimination in the sentencing phase, either as a result of the Rule 11 proceeding or by operation of law when the plea
is entered. (15) The Court explained:

 The Fifth Amendment by its terms prevents a person from being "compelled in any criminal case to be a witness against himself."
U.S. Const., Amdt. 5. To maintain that sentencing proceedings are not part of "any criminal case" is contrary to the law and to
common sense. As to the law, under the Federal Rules of Criminal Procedure, a court must impose sentence before a judgment of
conviction can issue.... As to common sense, it appears that in this case, as is often true in the criminal justice system, the defendant
was less concerned with the proof of her guilt or innocence than with the severity of her punishment. Petitioner faced imprisonment
from one year upwards to life, depending on the circumstances of the crime. To say that she had no right to remain silent but instead
could be compelled to cooperate in the deprivation of her liberty would ignore the Fifth Amendment privilege at the precise stage
where, from her point of view, it was most important. Our rule is applicable whether or not the sentencing hearing is deemed a
proceeding separate from the Rule 11 hearing, an issue we need not resolve. (16)

 



 Similarly, in this case we need not decide whether a punishment hearing, following an open plea, is necessarily a proceeding
separate from the Texas entry-of-plea hearing. However, we have followed the Supreme Court's lead in Mitchell. 

 In Carroll v. State, (17) we held that a defendant who pleads guilty, with a non-negotiated plea to the trial court, does not waive his
right to remain silent at the sentencing proceeding. (18) Therefore, whether one calls the sentencing stage of a guilty plea hearing a
unitary or separate proceeding, it certainly is a proceeding in which the defendant has a separate right to remain silent which he may
choose to invoke or waive. It is not, however, a part of a guilty-plea colloquy which is the concern of both Federal and Texas Rule
410. 

 As the Supreme Court further explained in Mitchell:

 There is no convincing reason why the narrow inquiry at the plea colloquy should entail such an extensive waiver of the privilege. 
Unlike the defendant who taking the stand, who "cannot reasonably claim that the Fifth Amendment gives him ... an immunity from
cross-examination on the matters he has himself put into dispute," ... the defendant who pleads guilty puts nothing in dispute
regarding the essentials of the offense. Rather, the defendant takes those matters out of dispute, often by making a joint statement
with the prosecution or confirming the prosecution's version of the facts. Under these circumstances, there is little danger that the
court will be misled by selective disclosure.... (19)



 Following the dictates of Mitchell and Carroll, the trial judge in this case explicitly warned appellant that he had a right not to testify
during the punishment hearing, but that if he did choose to testify he would be treated as any other witness and his testimony would
be under oath subject to cross-examination. (20) Only after appellant expressly waived his Fifth Amendment rights, did he take the
witness stand to testify about his background, education, family, character, the details of this offense, and of his remorse for killing
Michael Wideman. This testimony was not part of a plea negotiation process with the prosecution seeking a mutually advantageous
compromise. It was not part of an entry-of-plea hearing. It was sworn testimony by a defendant who clearly had a Fifth
Amendment right not to testify, but who knowingly and voluntarily waived that right and did testify in the hope of obtaining a more
lenient sentence proposal from the trial judge. 

 I cannot think what public-policy rationale is served by insulating that freely given sworn testimony from any use in future criminal
proceedings. The majority states that it was important that the State "did not object to [appellant's] request for withdrawal, the
court's exercise of discretion in allowing appellant to withdraw his plea, nor the trial judge's announcement, prior to entrance of the
plea, that she intended to exercise her discretion in this manner." (21) But, under the trial court's "timely pass for plea" procedure, the
prosecutor is almost superfluous. The State is entitled to offer evidence and argument at the punishment stage, but that is the extent
of its participation in the process. The entry of the plea, the colloquy between the defendant and the court, the determination of a
proposed sentence, and the decision of whether or not to accept that proposed sentence are matters conducted solely between the
trial judge and the defendant. 

 Perhaps, as the Court states, this procedure "provides the same net effect as plea bargaining does" (22) to the extent that some
criminal cases may be resolved short of a full trial. However, it does so at the heavy expense of excluding the State from the plea
bargaining process; putting the trial judge very far forward in that process; and wholly insulating a defendant's public, sworn
testimony during the punishment stage from any future consequences if he declines the trial judge's proffered sentence and
withdraws his plea.

 I cannot agree that either the letter or the spirit of Rule 410(3) protects appellant from his own voluntary sworn testimony during
the punishment hearing of this "timely pass for plea" proceeding after he decided that he did not wish to accept the trial judge's
proposed sentence. Although he might well have other valid complaints concerning this process, (23) appellant should not be allowed
to claim the protection of Rule 410(3) which was designed to protect very different societal and criminal justice interests than those
at issue here. Therefore, I respectfully dissent. 

Cochran, J.

Filed: May 19, 2004

Publish

 

1. State v. Bowie, No. 12-02-00182/83-CR, 2003 Tex. App. LEXIS 1902 (Tex. App.-Tyler 2003).

2. Bowie v. State, No. 05-02-00527-CR, 2003 Tex. App. LEXIS 1811 (Tex. App.-Dallas 2003) (not designated for
publication).

3. State v. Bowie, 2003 Tex. App. LEXIS 1902 at *8-9.

4. Fed. R. Crim. Proc. 11. Although, read literally, Rule 11 also covers pleas of not guilty, those are not the Rule 11-type
proceedings encompassed by Fed. R. Evid. 410 or Tex. R. Evid. 410.

5. 2 Chrisopher B. Mueller & Laird C. Kirkpatrick, Federal Evidence § 147, at 164 (2d ed. 1994).

6. Fed. R. Crim. Proc. 11(c) & (d); Tex. Code Crim. Proc. art. 26.13(a) & (b).

7. Fed. R. Crim. Proc. 11(c)(5) & (f); Tex. Code Crim. Proc. art. 1.15.

8. Mueller & Kirkpatrick, supra note 5, § 142, at 122. 

9. Mitchell v. United States, 526 U.S. 314, 322 (1999).

10. See, e.g., United States v. Davis, 617 F.2d 677 (D.C. Cir. 1979), in which the court of appeals explained the exclusionary
purpose of Fed. R. Evid. 410(3):

 Other statements made "during proceedings in connection with the disclosure and acceptance or rejection of a plea agreement" fall
within the rule as well. Excluding these statements is necessary to effectuate the rejection or later withdrawal. Were the statements
admissible, the defendant's own incriminating words, inseparably linked to a plea now regarded as a nullity, in many cases would
operate to convict him, thereby rendering meaningless the rejection or withdrawal.

Id. at 684 (citations omitted). Texas courts, like the drafters of the federal rule, have recognized that a defendant who enters a
guilty plea pursuant to a plea bargain agreement may make statements regarding the rationale for his plea that are designed primarily
to effectuate the bargain. See, e.g., Ex parte Tuley, 109 S.W.3d 388, 405 (Tex. Crim. App. 2003) (concurring op. on reh'g); Cruz
v. State, 530 S.W.2d 817, 821-22 (Tex. Crim. App. 1975) (stating that defendants "commonly deny during anArt. 26.13 ...
inquiry that any promises have been made that induced a plea of guilty, when in fact the prosecutor has promised to recommend a
certain sentence in exchange for the plea. The deceptive denial stems from the fear that the trial court will not accept the plea if the
question is answered truthfully").

11. An "open plea"-a guilty plea entered without any previous agreement with the government-is the closest analogy to this "timely
pass for plea" procedure, although an "open plea" cannot be retracted at the defendant's pleasure.

12. See, e.g., Hutto v. Ross, 429 U.S. 28, 30 n.3 (1976) (noting that defendant's post-plea agreement statement to prosecutor
was not a statement made during the plea negotiation process and was not required by the terms of the plea agreement; holding that
confession was not involuntary simply because "it would not have been made 'but for the plea bargain'"); United States v. Marks,
209 F.3d 577, 582 (6th Cir. 2000) (defendants' inculpatory statements made to F.B.I. agents after plea agreement had been
completed and formal pleas entered were not protected by Rule 11 and were admissible); United States v. Segal, 549 F.2d 1293,
1296 (9th Cir. 1977) ("[i]t is the taking of the plea, not the imposition of sentence or the revocation of probation, to which the rule
[Rule 11] is addressed"); United States v. Davis, 617 F.2d 677, 685 (D.C. Cir. 1979). As the court in Davisexplained:

 Excluding testimony made after and pursuant to the [plea] agreement would not serve the purpose of encouraging compromise. 
Indeed, such a rule would permit a defendant to breach his bargain with impunity: he could renounce the agreement and return to
thestatus quo ante whenever he chose, even though the Government has no parallel power to rescind the compromise unilaterally. 
The drafters of rule 11(e)(6) could not have contemplated such a result.

Id. at 685 (citation omitted).

13. United States v. Medina-Estrada, 81 F.3d 981, 984 (10th Cir. 1996) ( "[s]ince Fed. R. Evid. 410 does not apply at
sentencing, it cannot prohibit the sentencing court's consideration of evidence relating to pleas of guilty which are later withdrawn");
United States v. Ruminer, 786 F.2d 381, 386-87 (10th Cir. 1986) (stating that neither Rule 410 nor Rule 11(e)(6)(D) apply at
federal sentencing stage).

14. 526 U.S. 314 (1999).

15. The Supreme Court stated:

 Of course, a court may discharge its duty of ensuring a factual basis for a plea by "questioning the defendant under oath, on the
record, and in the presence of counsel about the offense to which the defendant has pleaded." Rule 11(c)(5). We do not question
the authority of a district court to make whatever inquiry it deems necessary in its sound discretion to assure itself the defendant is
not being pressured to offer a plea for which there is no factual basis. A defendant who withholds information by invoking the
privilege against self-incrimination at a plea colloquy runs the risk the district court will find the factual basis inadequate. At least
once the plea has been accepted, statements or admissions made during the preceding plea colloquy are later admissible against the
defendant, as is the plea itself. A statement admissible against a defendant, however, is not necessarily a waiver of the privilege
against self-incrimination. Rule 11 does not prevent the defendant from relying upon the privilege at sentencing.

 Treating a guilty plea as a waiver of the privilege at sentencing would be a grave encroachment on the rights of defendants.

Id. at 324.

16. Id. at 327 (emphasis added).

17. 42 S.W.3d 129 (Tex. Crim. App. 2001).

18. Id. at 132.

19. Mitchell, 526 U.S. at 322-23.

20. Indeed, it seems ironic that the trial judge clearly warned appellant that any sworn testimony he gave at the punishment hearing
would be treated like that of any other witness, but later found herself constrained to suppress that previously warned testimony
under Rule 410(3)- a rule that she stated for the record that she disagreed with but was required to follow.

21. Bowie, __ S.W.3d at __, slip op., at 12-13 (majority opinion).

22. Bowie, ___ S.W.3d at __, slip op. at 13 (majority opinion).

23. See, e.g., State ex rel. Bryan v. McDonald, 662 S.W.2d 5, 9 (Tex. Crim. App. 1983) (setting out various reasons why
"[j]udicial involvement in plea negotiations runs afoul of due process and fundamental fairness" and holding that trial judge's
"practice of issuing proposed assessments of punishment" violated the Texas Constitution).