IN THE COURT OF CRIMINAL APPEALS


OF TEXAS






NO. PD-757-06






FRANCIS WILLIAM STRINGER, Appellant



v.



THE STATE OF TEXAS





ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW


FROM THE SECOND COURT OF APPEALS


TARRANT COUNTY





 Keasler, J., delivered the opinion for a unanimous Court. 

 

O P I N I O N 



 The trial judge overruled Francis William Stringer's Confrontation Clause objection
to the admission of information about an extraneous, unadjudicated offense contained in the
presentence investigation report. Stringer appealed, and the court of appeals held that
Stringer's written waiver of his right to confront and cross-examine witnesses pursuant to
Article 1.15, Texas Code of Criminal Procedure, which was made at the time of his guilty plea,
applied to the punishment stage. (1) We disagree, reverse its judgment, and remand the case for
further consideration. Procedural History Stringer was charged with possession of child pornography, a third-degree felony
offense. Without a plea-bargain agreement with the State, Stringer entered a guilty plea before
the trial judge. In entering his plea, Stringer signed written admonishments, which stated,
among other things: 

 (9) Joined by my attorney and in accordance with Art. 1.13 and 1.15 of the
Code of Criminal Procedure, I waive and give up my right to a jury, both
as to my guilt and assessment of my punishment. Under Art. 1.15, Code
of Criminal Procedure, I waive and give up the right to appearance,
confrontation, and cross-examination of the witnesses, and I consent to
oral and written stipulations of evidence[.] 


Stringer did not waive the preparation of a presentence investigation report (PSI). The trial
judge accepted Stringer's guilty plea, but deferred any finding on Stringer's guilt until the PSI
was prepared.

 During the hearing held after the PSI was completed, the State asked the trial judge to
take judicial notice of the PSI. Stringer objected to the admission of the information
contained in the "Adult Felony History" section of the report. This section of the report
contained detailed information about a pending charge for possession of child pornography in
Dallas. Citing the United States Supreme Court's decision in Crawford v. Washington, (2)
Stringer claimed that admitting the evidence would violate his Sixth Amendment right to
confront and cross-examine witnesses during the punishment phase of his trial. The State
claimed that the trial judge had a duty to inquire into the offense and stated that the witnesses
interviewed for the "Adult Felony History" section of the report would be available for cross-examination. The trial judge overruled Stringer's objection but allowed Stringer to have a
running objection. 

 After hearing arguments from the State and Stringer on punishment, the trial judge found
Stringer guilty and sentenced him to nine years' imprisonment. 

 Having preserved his right to appeal, Stringer appealed the trial judge's decision to
admit the "Adult Felony History" section of the PSI report. (3) The Fort Worth Court of Appeals,
with Justice Dauphinot dissenting, held that "Stringer knowingly, voluntarily, and intelligently
waived his Sixth Amendment right to confront and cross-examine witnesses at the sentencing
hearing." (4) The court reasoned that the admonishments signed by Stringer when he entered his
guilty plea stated that he waived his right to confront and cross-examine witnesses. (5) 

 In dissent, Justice Dauphinot concluded that Stringer's waiver of his right to
confrontation and cross-examination applied only to the guilt phase. (6) Justice Dauphinot relied
on our decision in Carroll v. State (Carroll V), (7) which in turn relied on the United States
Supreme Court's opinion in Mitchell v. United States. (8) In Mitchell, the Supreme Court held
that a waiver of the privilege against self-incrimination pursuant to a guilty plea does not waive
the privilege at sentencing. (9) The Court reasoned that, although the petitioner was admonished
by the district judge as required by Federal Rule of Criminal Procedure 11 that she was waiving
her Fifth Amendment right against compelled self-incrimination by pleading guilty and waiving
her right to a trial, "the warning would not have brought home to petitioner that she was also
waiving the right to self-incrimination at sentencing." (10) "A waiver of a right to trial with its
attendant privileges is not a waiver of the privileges which exist beyond the confines of the
trial." (11) The Court went on to assert that adjudication of guilt does not eliminate the potential
for compelled self-incrimination by the defendant. (12) "Where the sentence has not yet been
imposed a defendant may have a legitimate fear of adverse consequences from further
testimony." (13) Finally, the Court stated that its holding applies whether or not the punishment
hearing is separate from the guilt hearing. (14)

 We applied Mitchell's holding in Carroll V. In that case, the appellant pled guilty and
waived her right to self-incrimination. (15) At the sentencing hearing, the trial judge warned the
appellant that if she invoked her Fifth Amendment privilege, it would be considered as a
circumstance against her in assessing punishment. (16) We held that the appellant's waiver of her
right against self-incrimination, pursuant to a non-negotiated guilty plea, did not apply to
sentencing. (17) In reaching this conclusion, we considered the text of the waiver and observed
that the appellant was not specifically warned that she would be waiving her right to silence at
sentencing. (18) 

 After a thorough discussion of our reliance on Mitchell in Carroll V, Justice Dauphinot
stated: 

 The right of confrontation and cross-examination is a significant constitutional
right, just like the right to remain silent. As in Carroll, the issue of guilt of the
primary offense was uncontested. And, as in Carroll, when the sentence has not
yet been imposed, a defendant may have a legitimate fear of adverse
consequences at punishment from hearsay evidence regarding extraneous acts
of misconduct. (19) 


Justice Dauphinot also concluded that Stringer properly contested the "Adult Felony History"
portion of the report and did not waive an objection "merely because he requested a PSI." (20) 
She observed that, under the Texas Code of Criminal Procedure, a defendant may comment on
a PSI and, with the permission of the trial judge, a defendant "may also contest portions of the
PSI by offering evidence of factual inaccuracies in the investigation or report." (21) She further
noted that the State should not be relieved of its burden to prove extraneous-offense evidence
beyond a reasonable doubt at punishment just "because the trial judge assesses punishment." (22)

 We granted Stringer's petition for discretionary review to determine whether the lower
court "erred in deciding that when [Stringer] waived his confrontation and cross-examination
right in this guilty plea pursuant to Code of Criminal Procedure [Article] 1.15, he also waived
it for purposes of the sentencing hearing[.]" We hold that the court of appeals erred and
remand for proceedings consistent with this opinion. 

Analysis

 "The Sixth Amendment's Confrontation Clause provides that, '[i]n all criminal
prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against
him.'" (23) The Confrontation Clause prohibits the admission of testimonial statements unless
the declarant is not available to testify and the accused had a prior opportunity for cross-examination. (24) The right to confront and cross-examine witnesses may be waived. (25) However,
the United States Supreme Court has made clear that we must "indulge every reasonable
presumption against waiver of fundamental constitutional rights . . . ." (26) A waiver of the right
to confront and cross-examine witnesses will not be presumed from a silent record. (27) 
Therefore, "for a waiver to be effective it must be clearly established that there was 'an
intentional relinquishment or abandonment of a known right or privilege.'" (28) When determining
"whether there has been an intelligent waiver" (29) of the right to confront and cross-examine
witnesses, we examine the specific facts and circumstances surrounding the waiver, "including
the background, experience, and conduct of the accused." (30)

 Before us, Stringer argues, "The Court of Appeals wrongly determined that the
Confrontation Clause waiver in this case, pursuant to Texas Code of Criminal Procedure
Article 1.15, and for purposes of entering a guilty plea, was also a waiver of the right for
punishment." He contends that the court misconstrued the written waiver because Article 1.15
does not apply to the punishment phase. Stringer therefore claims that the court of appeals's
decision conflicts with the Supreme Court's opinion in Mitchell and our opinion in Carroll
V.

 The State contends that Stringer's written waiver applied to guilt and punishment. The
State asserts, "The waiver's placement in the same paragraph immediately following and
without contradiction of a waiver explicitly mentioning the guilt and the punishment phases
indicated that it is applicable to both phases[.]" The State further argues, "Had the waiver of
confrontation rights in the second sentence been applicable to only the guilt stage of the
proceedings, it would have been contained in a new numbered paragraph or it would have
expressly stated that it applied only to the guilt phase." 

 Offering two alternative waiver arguments, the State first contends that Stringer failed
to make a timely objection to the PSI report. According to the State, Stringer could have
objected when he entered his guilty plea and the trial judge ordered the report because he was
put on notice that the report would include information about the unadjudicated Dallas offense
as part of his criminal history. (31) Next, the State contends that Stringer waived any objection
by objecting only to a portion of the report. The State asserts that "there is no confrontation
distinction between different portions of the report" and therefore Stringer "should have
objected to the entire report or not at all." 

 In line with the reasoning and holding of both Mitchell and Carroll V with respect to
the Fifth Amendment right to self-incrimination, the court of appeals recognized the
distinction between the waiver of the right to confront and cross-examine at the guilt stage and
the wavier of that right at the punishment stage. (32) And in deciding whether Stringer waived his
right to confront and cross-examine witnesses at punishment, the court relied solely on the
text of the written waiver; it did not find that Stringer waived his right to confrontation and
cross-examination at punishment by virtue of his guilty plea or that the waiver of that right,
entered at the time of his guilty plea, automatically applied to punishment. (33) Thus, in this case,
whether the court of appeals correctly determined that Stringer waived his right to confront
and cross-examine witnesses at the punishment stage is controlled by the text of the written
waiver. (34) 

 The written waiver stated: "Under Art. 1.15, Code of Criminal Procedure, I waive and
give up the right to appearance, confrontation, and cross-examination of the witnesses . . . [.]" 
Although the State places great significance on the fact that this waiver followed, in the same
paragraph, Stringer's waiver of his right to a jury trial at guilt and punishment, we find its
arguments unpersuasive. The waiver of the right to confront and cross-examine does not refer
to punishment even though, as shown by the waiver of the right to a jury, applicable to both
guilt and punishment, such express language could have easily been incorporated into the
waiver. In the absence of any explicit reference to punishment and, in light of the wavier's
direct reference to Article 1.15, we decline to accept the State's invitation to infer that the
waiver applied to punishment. (35) 

 We conclude that the introductory reference to Article 1.15 defines the scope of the
written waiver and, in doing so, it limits the application of the waiver to the guilt stage. 

 Article 1.15, titled "Jury in felony," states:

 No person can be convicted of a felony except upon the verdict of a jury duly
rendered and recorded, unless the defendant, upon entering a plea, has in open
court in person waived his right of trial by jury in writing in accordance with
Articles 1.13 and 1.14; provided, however, that it shall be necessary for the state
to introduce evidence into the record showing the guilt of the defendant and said
evidence shall be accepted by the court as the basis for its judgment and in no
event shall a person charged be convicted upon his plea without sufficient
evidence to support the same. The evidence may be stipulated if the defendant
in such case consents in writing, in open court, to waive the appearance,
confrontation, and cross-examination of witnesses, and further consents either
to an oral stipulation of the evidence and testimony or to the introduction of
testimony by affidavits, written statements of witnesses, and any other
documentary evidence in support of the judgment of the court. Such waiver and
consent must be approved by the court in writing, and be filed in the file of the
papers of the cause. (36)


 To determine the "collective legislative intent or purpose" behind Article 1.15, we
analyze the statutory text "and attempt to discern the fair, objective meaning of that text at the
time of its enactment." (37) We will give effect to the plain meaning of Article 1.15 "if the
meaning of the statutory text, when read using the established canons of construction relating
to such text, should have been plain to the legislators who voted on it[.]" (38) We will not give
effect to the plain meaning, however, where the text is ambiguous or the application of the
plain meaning "would lead to absurd consequences that the Legislature could not have possibly
intended[.]" (39) In such cases, we will consider extratextual sources to develop a reasonable
interpretation. (40) 

 According to its terms, Article 1.15 applies only where a felony-defendant waives the
right to a trial by jury at the guilt stage. Article 1.15 clearly speaks of the introduction of
evidence showing the defendant's guilt and evidence sufficient to support a defendant's
conviction where a defendant waived the right to a jury trial at the guilt stage. (41) Article 1.15
contains no reference to punishment. (42) Indeed, as former Presiding Judge Onion observed,
Article 1.15 concerns the State's burden to produce sufficient evidence to support a guilty
verdict when a defendant waives the right to a jury trial. (43) And when a defendant waives a jury
at the guilt stage, the requirement of a written waiver of the right to confrontation and cross-examination is applicable only when a defendant consents to stipulate to evidence for the trial
judge's consideration in rendering a verdict on guilt. (44) 

 Our understanding of Article 1.15 is consistent with our determination in Holtzclaw v.
State. (45) In that case, the appellant, who elected to have the trial judge assess punishment after
the jury found him guilty of robbery, entered a plea of true to the enhancement and stipulated
to the enhancement during the punishment hearing. (46) On appeal, the appellant claimed that the
evidence was insufficient to support a prior conviction alleged for purposes of enhancement
at punishment. (47) We disagreed and held that Article 1.15 "has no application in jury cases
whether punishment is assessed by the court or by a jury." (48) In recognizing that Article 1.15
does not apply when a judge assesses punishment after a jury enters a guilty verdict, we
necessarily concluded Article 1.15 does not apply at the punishment stage. 

 Because Article 1.15 applies only to the guilt stage, we hold that Stringer's written
waiver of his right to confrontation and cross-examination applied only to the guilt stage.
Therefore, contrary to the determination of the court of appeals, Stringer did not knowingly,
voluntarily, and intelligently waive his right to confront and cross-examine witnesses at
sentencing.

 Finally, as noted above, the court of appeals did not address the State's alternative
waiver arguments in deciding that Stringer waived his right to confrontation and cross-examination at sentencing. "In our discretionary review capacity we review 'decisions' of the
courts of appeals." (49) Thus, the State's alternative arguments are not ripe for our review. (50) 
Because we reverse the judgment of the court of appeals, the court shall consider these
arguments on remand. (51) 

Conclusion

 We conclude that the court of appeals erred in holding that Stringer's written waiver of
his right to confront and cross-examine witnesses pursuant to Article 1.15 applied to the
punishment stage. Therefore, the judgment of the court of appeals is reversed and this case is
remanded to the court of appeals. On remand, the court of appeals shall first address the
State's alternative arguments. In the event that the court rejects the State's alternative
arguments, the court shall determine whether the information contained in the "Adult Felony
History" section of the report is "testimonial" under Crawford. If the court determines that
the information is "testimonial," then the court shall consider whether Stringer was harmed. (52) 


DELIVERED: November 7, 2007

PUBLISH 

 

 




 
 

1. Stringer v. State, 196 S.W.3d 249, 251-52 (Tex. App.--Fort Worth 2006).
2. 541 U.S. 36 (2004).
3. Stringer, 196 S.W.3d at 250. 
4. Id. at 252.
5. Id. 
6. Id. at 252-55 (Dauphinot, J., dissenting).
7. 42 S.W.3d 129 (Tex. Crim. App. 2001).
8. 526 U.S. 314 (1999).
9. Id. at 325.
10. Id. at 323-24.
11. Id. at 324.
12. Id. at 325 (quoting Estelle v. Smith, 451 U.S. 454, 462 (1981)).
13. Id. at 326.
14. Id. at 327.
15. Carroll V, 42 S.W.3d at 130.
16. Id. at 131.
17. Id. at 132. 
18. Id. at 132-33.
19. Stringer, 196 S.W.3d at 254-55 (Dauphinot, J., dissenting).
20. Id. at 255-56 (Dauphinot, J., dissenting).
21. Id. at 255 (Dauphinot, J., dissenting) (citing Tex. Code Crim. Proc. Ann. art.
42.12, § 9 (Vernon Supp. 2005)).
22. Id. 
23. Crawford, 541 U.S. at 42; see also Pointer v. Texas, 380 U.S. 400, 403 (1965)
(holding that "the Sixth Amendment's right of an accused to confront the witnesses against
him is likewise a fundamental right and is made obligatory on the States by the Fourteenth
Amendment.").
24. Crawford, 541 U.S. at 68-69.
25. Brookhart v. Janis, 384 U.S. 1, 4 (1966).
26. Johnson v. Zerbst, 304 U.S. 458, 464 (1938), overruled in part on other
grounds by Edwards v. Arizona, 451 U.S. 477 (1981); Brookhart, 384 U.S. at 4. 
27. Boykin v. Alabama, 395 U.S. 238, 243 (1969).
28. Brookhart, 384 U.S. at 4 (quoting Zerbst, 304 U.S. at 464). 
29. Zerbst, 304 U.S. at 464.
30. Zerbst, 304 U.S. at 464; see also Brookhart, 384 U.S. at 4 (stating, "In deciding
the federal question of waiver raised here we must look, of course, to the facts which
allegedly support the waiver.").
31. See Tex. Code Crim. Proc. Ann. art. 42.12 § 9.
32. Stringer, 196 S.W.3d at 250-52. 
33. Compare Stringer, 196 S.W.3d at 250-52, with Carroll V, 42 S.W.3d at 131
(observing that in Carroll II, we incorrectly held that the appellant's guilty plea extended to
the issue of punishment because, when the appellant entered her guilty plea, "the
proceeding became 'unitary' to determine the issue of punishment[.]").
34. See Carroll V, 42 S.W.3d at 132 (reviewing written waivers); see also Mitchell,
526 U.S. at 325 (reviewing transcript from plea colloquy).
35. Cf. Boykin v. State, 818 S.W.2d 782, 785 (Tex. Crim. App. 1991).
36. Tex. Code Crim. Proc. Ann. art. 1.15 (Vernon 2005) (last amended by Acts
1991, 72nd Leg., ch. 652, § 3, eff. Sept. 1, 1991).
37. Boykin, 818 S.W.2d at 785.
38. Id. 
39. Id. (emphasis in original).
40. Id.
41. See Rodriguez v. State, 442 S.W.2d 376, 385 (Tex. Crim. App. 1968) (op. on
reh'g).
42. Boykin, 818 S.W.2d at 785. 
43. Tex. Code Crim. Proc. Ann. art. 1.15 (Vernon 1977) (Hon. John F. Onion, Jr.,
Special Commentary); Bowie v. State, 135 S.W.3d 55, 62 (Tex. Crim. App. 2004);
Edwards v. State, 463 S.W.2d 733, 733-34 (Tex. Crim. App. 1971).
44. See Matthews v. State, 414 S.W.2d 938, 939-40 (Tex. Crim. App. 1967). 
45. 451 S.W.2d 505 (Tex. Crim. App. 1970).
46. Id. at 506-07.
47. Id. at 507.
48. Id.; see also Williams v. State, 641 S.W.2d 925, 927 (Tex. Crim. App. 1982). 
49. Lee v. State, 791 S.W.2d 141, 142 (Tex. Crim. App. 1990) (citing Tex. Const.
Art. V, § 5; Tex. Code Crim. Proc. Ann. art. 44.45; Tex. R. App. P. 200(a) (current
version at Tex. R. App. P. 66.3)). 
50. Id.
51. See Jones v. State, 942 S.W.2d 1, 2 n.1 (Tex. Crim. App. 1997).
52. Russeau v. State, 171 S.W.3d 871, 881 (Tex. Crim. App. 2005); Tex. R. App. P.
44.2(a).